[S. F. No. 1229.    Department One.—February 21, 1899.]

ALBERT LIMBERG, Respondent, v. GLENWOOD LUMBER
COMPANY, Appellant.

MASTER AND SERVANT—NEGLIGENCE—DEFECTIVE APPLIANCES—ASSUMP-
TION OF RISK.—Notwithstanding the negligence of a master in fur-
nishing the servant with defective appliances, the servant as-
sumes the risk of working therewith, and impliedly agrees to
release the master from liability therefor, if he either con-
tinues to use them with knowledge of their dangerous char-
acter and without objection or protest, or continues to use them
with like knowledge for an unreasonable time, after notification
given to the master of their defective character, and after the
servant has no right to expect that the defect will be remedied.

ID.—LAPSE OF UNREASONABLE TIME—QUESTIONS OF FACT AND LAW.—
Generally, the question of reasonable time is one of fact for the
jury; but where it appears, without conflict in the evidence,
that the servant continued his employment for nine months
after notification to the master of the defective appliance, and
without any intimation from the master that the defect would
be repaired, during all of which time the defect was obvious
to his senses, the delay is unreasonable as matter of law, and
is fatal to his cause of action for injury resulting from the
defect.

ID.—EVIDENCE—REMEDY OF DEFECT AFTER ACCIDENT.—In an action for
negligence of a master in furnishing defective appliances, evi-
dence is not admissible to show that the defects were remedied
after the accident.

ID.—EXPERT EVIDENCE—SAFETY OF APPLIANCES.—It is not proper, in
such an action to admit the testimony of expert witnesses as to
what appliances were safe, and what were unsafe. A master
is not bound to furnish the safest appliances. The jury is the
proper judge of the safety of the appliances actually used; and
the safety of other appliances is immaterial.

APPEAL from a judgment of the Superior Court of Santa
Clara County and from an order denying a new trial. M. H.
Hyland, Judge.

The facts are stated in the opinion of the court.

D. W. Burchard, and F. E. Spencer, for Appellant.

J. C. Black, for Respondent.

GAROUTTE, J.—Defendant appeals from a judgment and

order denying a motion for a new trial. The action is one for damages for personal injuries, and arises upon the following state of facts, as testified to by the plaintiff and his witnesses:

Plaintiff was a teamster of experience, forty-one years of age. He was hired by defendant to haul lumber with a wagon and four horses. He continued in this employment for a period of eleven months; then, while traveling upon the public road with his loaded wagon, he fell therefrom beneath the wheels, and the loss of a leg was the result. He asserts negligence upon the part of the defendant in this, that the appliances furnished him with which to do the work were defective. These defective appliances consisted of a wagon having no seat, and also of a pair of lines that were too short. It may be conceded that if either of these defects had not existed the accident would not have happened. A short time after the hiring of plaintiff he complained to defendant at two different times that the lines were too short, but never made any complaint as to the lack of a seat upon the wagon. Defendant made no promise to remedy the defective lines, but remained silent when the complaints were made. From the foregoing state of facts it is insisted by defendant that the motion for nonsuit should have been granted, and it is also claimed that the evidence does not support the verdict and judgment. The contention in substance is but a single one, and the sufficiency of the evidence is the question before the court. Testing the facts of this case by the law, we cannot see how plaintiff is entitled to recover. It may be conceded that defendant was negligent in not furnishing plaintiff with proper appliances to do the work. Such concession being made, then the question presented is not strictly one of contributory negligence upon the part of the plaintiff, but, rather, Did plaintiff assume the risk of working with these defective appliances? If there had been an express contract between the master and servant that the work should be done without a seat to the wagon, and with these identical lines, clearly that agreement would have barred a recovery in this action. This being so, do not the facts indicate an implied contract to the same effect? While the servant only assumes the dangers and risks necessarily incident to the work to be performed, he may, by contract, either express or implied, also

assume the risk of working with defective appliances. Indeed, many cases go further and sustain the proposition that, where the servant proceeds at the outset to perform his work with defective appliances, having knowledge of the defect, then an implied contract arises to the effect that he assumes the risk— especially so if he is aware of the danger surrounding him by reason of the defect. And to say that the servant assumes the risk is but another way of saying that he impliedly agrees to release the master from liability.

In this case we lay aside any question as to the lack of a seat upon the wagon. If the wagon was defective in this regard, the plaintiff, an expert teamster, by using it for a period of eleven months, without objection or protest of any kind, assumed all of the risks incident to the use of that kind of a wagon. We have found no case in the books involving anything like a similar state of facts which holds that plaintiff may recover damages for injuries received. We know of but a possible exception to the rule, and that would be a case where the servant, though aware of the defect, was not aware of the danger incident to it. That exception cannot be urged here. This defect of the wagon was of a character that the servant, as a reasonably prudent man, must have been aware of the danger incidental to its use. He cannot be allowed to close his eyes to the danger, and thereafter say, "I did not know it was dangerous."

As to the defective lines, additional principles of law are involved to those arising upon the defect of the wagon, for, as to the lines, the plaintiff made complaint to defendant on two different occasions regarding their defective character. Yet when we pause to consider that the last complaint was made more than nine months before the accident, and to consider the additional fact, pregnant with materiality here, that defendant remained silent under the complaint of the servant, and gave no promise to cure the defect, the case as to the two respective defects is not widely variant. Plaintiff knew of the defect, and must have known of the danger that surrounded him by reason of it. Any reasonably prudent man must have been aware of it, and the defendant must be held to be a man of ordinary prudence; indeed, it appears that he was an expe-

rienced teamster.   Here the master gave no intimation to the servant that he would remedy the defect, and allowed it to continue for nine months without taking a step toward remedying it.   Under these circumstances, the servant, at the time of the accident, was not working in expectation that the defect would yet be remedied.   After a lapse of nine silent months he had no right to indulge in any such expectation.   Many cases hold that when the master, after complaint made, promises to correct the defect, the servant may continue his employment for a reasonable time, relying upon the master's promise, but here we have no promise.   We also have the lapse of a most unreasonable time.   The mere fact that the servant makes complaint of the defect gives him no right to rely for all future time upon the complaint made, and thus irrevocably fasten a liability upon the master.   If the master had positively refused to correct the defect when the complaint was made to him, then certainly the servant would have been forced by the law to do either one of two things—either assume the risk, and thus release the master from liability, or leave the master's employment.   In this case the same conditions substantially arose when a reasonable time had gone by after the making of the complaint to the master, and nothing had been done, or even promised.   After complaint made, and nine months had come and gone, the plaintiff had no right as a reasonable man to believe that the master would remedy these defective lines.

The law of this question, as declared by text-books and decisions of courts, is in line with the foregoing views.   Shearman and Redfield on Negligence, a work more friendly to servants than any other standard text-book, declares: "The latest and best authorities hold that the liability of the master for risks caused by his negligence, which did not exist when the servant accepted the employment, depends upon a 'question of fact whether a servant who works on, appreciating the risk, assumes it voluntarily or endures it, because he feels constrained to.' If he voluntarily continues work with full notice of the risk, he assumes it, but not so if he acts under coercion."   There certainly is no question of coercion in this case.   It is said in *Stephenson v. Duncan*, 73 Wis. 408, 9 Am. St. Rep. 806: "But if the plaintiff did continue his employment for a reasonable

time after the defendant could have removed the defects, he would then be deemed to have waived his objections and assumed the risk of operating the machinery in the unsafe and dangerous condition in which it was." We find the following language in *Hough v. Railway Co.*, 100 U. S. 224: "If the engineer, after discovering or recognizing the defective condition of the cow-catcher or pilot, had continued to use the engine, without giving notice thereof to the proper officers of the company, he would undoubtedly have been guilty of such contributory negligence as to bar a recovery, so far as such defect was found to have been the efficient cause of the death. He would be held in that case to have himself risked the dangers which might arise from a use of the engine in such defective condition. But 'there can be no doubt that, where the master has expressly promised to repair a defect, the servant can recover for the injury caused thereby within such a period of time after the promise as it would be reasonable to allow for its performance, and, as we think, for an injury suffered within any period which would not preclude all reasonable expectation that the promise might be kept.' " (Citing cases.) It is said in *Morbach v. Mining Co.*, 53 Kan. 740: "But if the servant continues in his work an unreasonable length of time after the master has agreed to remedy the defect complained of, or if the danger is imminent or obvious, he assumes the risks incident thereto. Generally, the question of reasonable time is one of fact for the jury; but where a servant has full knowledge of the danger of his employment, as in this case, after his first inquiry, and continues in the master's service while he is conducting his business in a way which the servant knows is dangerous, the servant cannot continue to wait, and after being injured, then claim damages. He should leave his dangerous employment within a reasonable time, on discovery of the master's method of doing business, when he finds that the master will not remedy the danger or fulfill his promise in that respect." (See, also, *Counsell v. Hall*, 145 Mass. 468; *Eureka Co. v. Bass*, 81 Ala. 200; 60 Am. Rep. 152; *Davis v. Graham*, 2 Colo. App. 210.) The only recent case in this state, to our knowledge, where this question has been at all involved, is *Martin v. California Cent. R. R. Co.*, 94 Cal. 326. It was there held that the mere fact

of a brakeman knowing that an appliance was defective and dangerous did not, as matter of law, bar a recovery based upon injuries received by reason of the defect. The element of time was not a material matter in that case and was not considered. And continued user of the appliance, with knowledge of the defect and its dangerous character, was not shown, and the question not discussed. *Magee v. North Pacific Coast R. R. Co.*, 78 Cal. 430, 12 Am. St. Rep. 69, which was relied upon to support the conclusion declared in the Martin case, is not opposed to the views here expressed.

The question here, then, resolves itself into this: At the conclusion of the introduction of evidence at the trial was there a question of fact for the jury to pass upon, as to whether or not plaintiff remained in the employ of defendant for an unreasonable time after his notification to defendant of the defective character of the lines? If that question ever may become a question of law by reason of any particular state of facts, then it would seem that a question of law alone was presented here. There is absolutely no conflict in the evidence. Plaintiff continued his employment for nine months after a notification to defendant of the defect, without any intimation from his master that the defect would be repaired, during all of which time the defective appliance was constantly before his eyes, and also in his hands. We believe that this delay of nine months is a fact absolutely fatal to plaintiff's cause of action. We see no difference in a delay of nine months and a delay of nineteen months, and, as a matter of law, this court must say that plaintiff, continuing for this long period of time in the employment of his master after his notification to the master of the defect, by implied agreement released the master from any liabilty resulting from injuries received in the use of the appliance; or, as some of the cases declare, plaintiff must be held to have been guilty of contributory negligence in continuing his employment for this long period of time with this defective appliance, a defective appliance of which he well knew, and the danger of its use *ex necessitate* ever present to his mind. In the comparatively early case of *McGlynn v. Brodie*, 31 Cal. 379, this court said: "Where a party works with or in the vicinity of a piece of machinery insufficient for the purposes for which it is employed,

or for any other reason unsafe, with a knowledge or means of knowledge of its condition, he takes the risk incident to the employment in which he is thus engaged, and cannot maintain an action for injuries sustained arising out of accidents resulting from such defective condition of the machinery. This is the principle established by all the cases." In view of the decision in *Martin v. Central Ry. Co., supra,* the aforesaid doctrine may be considered modified, but the modification goes to a limited extent only, for the limitation only goes to the point that the servant, after beginning his employment with a defective appliance, may have the time and opportunity to call the attention of the master to the defect, and the master may have the time and opportunity after the notification to remedy the defect, before it be held that the servant has assumed the risk.

It was error for the court to admit evidence under objection to the effect that the defects were remedied after the accident. In *Sappenfield v. Main Street Ry. Co.,* 91 Cal. 62, the court said: "Such a rule puts an unfair interpretation on human conduct, and virtually holds out an inducement for continued negligence." (See, also, *Hager v. Southern Pac. Co.,* 98 Cal. 311; *Turner v. Hearst,* 115 Cal. 401.) The materiality of this error under the circumstances need not be considered.

It was not proper to admit the testimony of expert witnesses as to what appliances were safe and what were unsafe. As illustrative of this branch of the case the record discloses the following: "Q. Can you state to the jury whether or not it is more safe for a teamster to sit on a bare load of lumber without a seat, or whether it is more safe with a seat for him?" And again: "Q. Can you state whether or not short lines used to drive horses is as safe as long lines without knots?" These questions were objectionable for two reasons: 1. It is not material to the case that the wagon would have been safer with a seat than without it; 2. Neither was it material to the case that longer lines would have been safer than shorter ones. Defendant was not bound to furnish the safest appliances that could be had in the market. Again, the questions cover a subject matter not calling for expert testimony under any circumstances. The jury was the best judge of the safety of the appliance used, and as to the safety of other appliances which

might have been used no such question was before the court, and clearly it was not material. (*Sappenfield v. Main Street Ry. Co., supra; Kauffman v. Maier*, 94 Cal. 281; *Redfield v. Oakland etc. Ry. Co.*, 112 Cal. 220.)

We find no merit in the contention that the bill of exceptions cannot be considered.

For the reasons stated the judgment and order are reversed and the cause remanded.

Van Dyke, J., and Harrison, J., concurred.

Hearing in Bank denied.