COULTER, RESPONDENT, *v.* UNION LAUNDRY COMPANY, APPELLANT.

(No. 2,292.)

(Submitted October 8, 1906. Decided December 22, 1906.)

*Master and Servant—Personal Injuries—Master's Liability— Defective Machinery—Assumption of Risks—Pleadings—Appeal—Record—Nonsuit.*

Appeal—Record—New Trial Statement—Certification—Sufficiency.
    1. Where the judge of a district court recites in his certificate settling a statement on motion for a new trial, that it contains all the evidence in the case, it is sufficient.

Master and Servant—Personal Injuries—Patently Defective Machinery—Complaint—Sufficiency.

2. A complaint, in an action by an employee of a steam laundry for injuries claimed to have been sustained by plaintiff while working on a defective mangle, is not insufficient for failure to allege that the defect in the machine was known to defendant, where sufficient facts were set up to show that the defect was patent and not latent.

Same—Statutory Liability of Master—Injuries to Servant—Defenses.

3. In an action for personal injuries alleged to have been sustained by plaintiff, a laundry employee, while working on a patently defective mangle, the evidence showed that she was twenty-one years of age, had worked for fourteen months in laundries, was familiar with the construction and operation of the machine, knew the defect in it and had not notified defendant of its defective condition, but continued in the employment until she was injured. Section 2662, Civil Code, makes an employer liable to his employee for losses caused by the former's want of ordinary care. *Held,* that this section, under such circumstances, did not preclude defendant from offering any defense, though he did not use ordinary care in furnishing ordinarily safe machinery.

Same—Injuries to Servant—Assumption of Risk—Nonsuit.

4. Where the evidence in an action for personal injuries sustained by an operator of a patently defective mangle in a steam laundry was not conflicting, but was all to the effect that plaintiff, who was twenty-one years of age, knew and realized the defect and danger incident to working with it, she assumed the risk, as a matter of law, and a nonsuit was properly granted.

Same—Personal Injuries—Assumption of Risk—Pleadings—Waiver—Nonsuit.

5. Though, in an action for personal injuries, the defense of assumption of risk had not been properly pleaded, but the cause had been tried upon that theory of the defense, and plaintiff's evidence showed that she could not recover in any event, nonsuit was proper.

(MR. JUSTICE HOLLOWAY, dissenting.)

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Rilla M. Coulter against the Union Laundry Company. A motion for nonsuit was granted, and from an order granting a new trial defendant appeals. Reversed and remanded.

*Mr. T. J. Walsh,* and *Mr. Wm. T. Pigott,* for Appellant.

It must appear from the statement on motion for a new trial or the bill of exceptions that it contains all the evidence, and the certificate of the judge in settling the bill cannot supply such defect by having incorporated therein a statement to the effect

that the statement or bill settled does in fact contain all the evidence. (*Porter* v. *Stone*, 62 Iowa, 442, 17 N. W. 654; *Knott* v. *Bessmer*, 82 Iowa, 752, 48 N. W. 922; *Winstead* v. *Standeford*, 21 Kan. 270; *Rullman* v. *Barr*, 54 Kan. 643, 39 Pac. 179; *Newby* v. *Myers*, 44 Kan. 477, 24 Pac. 971; *Exendine* v. *Goldstein*, 14 Okla. 100, 77 Pac. 45; *Devine* v. *Silvers*, 8 Okla. 700, 58 Pac. 781; *Smith* v. *Alexander*, 67 Kan. 862, 74 Pac. 240; *Wade* v. *Gould*, 8 Okla. 690, 59 Pac. 11; *Bell* v. *Bell*, 60 Kan. 857, 56 Pac. 471.) And it not appearing that all the evidence is in the record, the propriety of the action of the trial court in granting the nonsuit could not be considered on the motion for a new trial, and it ought, accordingly, to have been denied. (*Lockey* v. *Horsky*, 4 Mont. 457, 2 Pac. 19; *Merk* v. *Bowery Min. Co.*, 31 Mont. 298, 78 Pac. 519; *Landt* v. *Schneider*, 31 Mont. 15, 77 Pac. 307; *Nicholl* v. *Littlefield*, 60 Cal. 238.)

The plaintiff in action for negligence assumes the burden of establishing not only the defect, but knowledge of it on the part of the defendant, or, what is the same thing, such a state of facts as that the law will charge him with knowledge.

Being obliged to establish either actual or constructive knowledge by his proof, it follows, necessarily, that his complaint must aver such knowledge. (4 Thompson's Commentaries, 3864; 1 Abbott's Trial Brief, p. 591, sec. 373; 2 Labatt on Master and Servant, 856 et seq.; *Walkowski* v. *Tenokee & G. C. Mines*, 41 L. R. A. 133-145, note.)

Plaintiff knew the defect and the danger, so far as the danger was enhanced by the bent rail. There is no escaping the conclusion that, as a matter of law, from her own statement of the facts, she assumed whatever risk was attendant upon the use of this machine by reason of the condition of the guard-rail. The very circumstances have been repeatedly under consideration by the courts and the question before the court can be resolved upon a study of those presenting injuries sustained by operatives of mangles. (See *Blom* v. *Yellowstone Park Assn.*, 86 Minn. 237, 90 N. W. 397; *Jensen* v. *Regan*, 92 Minn. 323, 99 N. W. 1126; *Bier* v. *Hosford*, 35 Wash. 544, 77 Pac. 871; *Greef* v.

*Brown,* 7 Kan. App. 394, 51 Pac. 926.)   The cases of *Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42, and *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871, are clearly distinguishable.   The defense of assumed risk is too thoroughly established in the law applicable to actions by a servant to recover for injuries sustained in the service to be displaced except by legislation.   (See 4 Thompson's Commentaries, sec. 4608; 1 Shearman & Redfield on Negligence, sec. 209.)

*Mr. E. A. Carleton,* for Respondent.

An express allegation of knowledge on the part of the master of the defect in the machinery is not necessary.   (*Warner* v. *Western etc. R. R. Co.,* 94 N. C. 250; *Crane* v. *Missouri Pac. Ry. Co.,* 87 Mo. 588; *Hall* v. *Missouri Pac. Ry. Co.,* 74 Mo. 298; *O'Connor* v. *Illinois etc. Ry. Co.,* 83 Iowa, 105, 48 N. W. 1002; *San Antonio etc. Ry. Co.* v. *Parr* (Tex. Civ. App.), 26 S. W. 861; *Chicago etc. Ry. Co.* v. *Hines,* 132 Ill. 161, 22 Am. St. Rep. 515, 23 N. E. 1021; *Hammond* v. *Schweitzer,* 112 Ind. 246, 13 N. E. 869; *Hoffman* v. *Dickinson,* 31 W. Va. 142, 6 S. E. 53; *Branch* v. *Port Royal etc. Co.,* 35 S. C. 405, 14 S. E. 808.)

The rationale of this doctrine, as laid down in the foregoing cases, is that the law imposes the duty upon the master not only to furnish safe machinery, etc., but to properly inspect the same and to see that the same is kept in a safe condition.   This is a continuing duty.   (4 Thompson on Negligence, sec. 3786.)   The presumption is, that the master has performed his duty which the law charges him with a knowledge of, and hence the master must know of the condition of his machinery, tools and appliances with which his servants must work.   (4 Thompson on Negligence, secs. 3794, 7527; 14 Ency. of Pl. & Pr., p. 340.)   Where the defect is latent, there is some reason for requiring an averment of knowledge on the part of the master. (*Morriss* v. *Bowers,* 105 Tenn. 59, 58 S. W. 328; *Evansville etc. Co.* v. *Duel,* 134 Ind. 156, 33 N. E. 355; 6 Thompson on Negligence, sec. 7529.)

Under the common-law doctrine of assumption of risk, it is fundamental that the master is not liable "in all cases" for the master's want of ordinary care. The master may be guilty of the want of ordinary care at the common law, and he would not be liable to the servant were he guilty of contributory negligence, or if the risk were an assumed one. Section 2662 of the Civil Code, providing that an employer must in all cases indemnify his employee for losses caused by the former's want of ordinary care, is not substantially the same as the common law, and hence, under section 3454 of the Code of Civil Procedure, may not be considered as continuing the common law on this point. The conclusion seems irresistible that the legislature has, in this instance, changed the rule of the common law, and in lieu thereof enacted section 2662, *supra,* imposing upon the master, *in every case,* the duty of exercising ordinary care in the selection of appliances, etc., upon penalty of being required to respond in damages if he fails so to do and injury to his servants results.

The common-law rule is inherently different from the statute under consideration. (6 Thompson, sec. 3986; 1 Labatt, sec. 14.) To say that the statute is simply declaratory of the common law is to say that the legislature did not mean what it said, and that the rules of interpretation of our Codes, as provided in section 3453 of the Code of Civil Procedure, and section 4652 of the Civil Code, are of no binding force when applied to the doctrine of the assumption of risk. Plainer language than that found in section 2662 of our Civil Code cannot be framed into a statute. It construes itself, and giving it its obvious meaning the master, to escape liability, must be free from the "want of ordinary care," in order to escape liability. (*Hall* v. *West & Slade Mill Co.,* 39 Wash. 447, 81 Pac. 915; *Whelan* v. *Washington Lumber Co.* (Wash.), 83 Pac. 98; *Hoveland* v. *Hall Bros. Shipbuilding Co.* (Wash.), 82 Pac. 1090; *Ericson* v. *McNeeley & Co.* (Wash.), 84 Pac. 3.)

Knowledge of the defect in machinery on the part of plaintiff is not alone sufficient to take a case from the jury, unless the danger is so imminent that it can be said that all prudent

persons would refuse to continue to work with it.   (2 Am. &
Eng. Ency. of Law, p. 126; *Mahoney* v. *Dore,* 155 Mass. 513,
30 N. E. 366; *Heavey* v. *Hudson etc. Co.,* 57 Hun, 339, 10 N. Y.
Supp. 585; *Sneda* v. *Libera,* 65 Minn. 337, 68 N. W. 36; *Magee*
v. *North Pac. Ry. Co.,* 78 Cal. 436, 12 Am. St. Rep. 69, 21 Pac.
114; *Sanborn* v. *Madera Flume etc. Co.,* 70 Cal. 266, 11 Pac. 710;
*Nofsinger* v. *Goldman,* 122 Cal. 609, 55 Pac. 429; *Daubert* v.
*Western Meat Co.,* 135 Cal. 144, 67 Pac. 133; *Lee* v. *Southern
Pac. Ry. Co.,* 101 Cal. 118, 35 Pac. 572; *Franklin* v. *Missouri etc.
Co.,* 97 Mo. App. 473, 71 S. W. 540; *Stager* v. *Troy Laundry
Co.,* 38 Or. 480, 63 Pac. 647, 53 L. R. A. 459; *Habishaw* v.
*Standard etc. Co.,* 131 Cal. 430, 63 Pac. 728.)

That nonsuit was properly denied, see *Fronk* v. *Evans City
Steam Laundry* (Neb.), 96 N. W. 1053; *Stager* v. *Troy Laundry
Co.,* 38 Or. 480, 63 Pac. 645, 53 L. R. A. 459; *Pearson* v. *Fed-
eral etc. Co.* (Wash.), 84 Pac. 633; *Tuckett* v. *American Steam
& Hand Laundry* (Utah), 84 Pac. 500.

Plaintiff was injured while at work outside of that embraced
in her contract of hiring; she, therefore, assumed no risk while
at work on the mangle.   (*McCabe* v. *Montana Cent. Ry. Co.,*
30 Mont. 323, 76 Pac. 703; *Railroad Co.* v. *Fort,* 17 Wall. 557,
21 L. Ed. 740; *Daubert* v. *Western Meat Co.,* 135 Cal. 144, 67
Pac. 133; *Pittsburg etc. Ry. Co.* v. *Adams,* 105 Ind. 151, 5 N. E.
187; *Supple* v. *Agnew,* 191 Ill. 439, 61 N. E. 392; 4 Thompson,
sec. 4614; *Martin* v. *California Central Ry. Co.,* 94 Cal. 329,
29 Pac. 645.)

MR. JUSTICE MILBURN delivered the opinion of the
court.

This is an action to recover damages for damage done to the
respondent, in that her hand was caught, burned, and crushed
by and between the rolls of a mangle, which machine she was
working at appellant's laundry.

It is alleged in the complaint that the defendant is a corpora-
tion; that plaintiff was injured by the mangle about May 1,
1902; that she was hired by the concern about March 10, 1902,

to run a machine called a neckband ironer, and continuously worked for the defendant until the time of her injury. Soon after being thus hired she, in addition to running the ironer, was ordered by the foreman of the company to assist from time to time in running and operating the mangle, and that, after finishing her regular work on the neckband ironer, by the direction of the foreman she would assist other employees in running the mangle; that on the first day of May, while so assisting, and without fault on her part, as she alleges, her right hand was caught between the rollers of the mangle, they being of iron or steel and heated to a very high degree and revolving with great speed, and her fingers and hand were drawn in between the rollers, which were very close together. Her fingers and hand were severely burned and injured, and by reason of such injury she has been permanently disabled and prevented from following her occupation and incapacitated from doing any considerable work or labor.

It is further alleged that the defendant, regardless of its duty to provide fit, suitable, and reasonably safe machinery and appliances with which she could perform her duties while at work for the defendant, failed and neglected so to do, but, on the contrary, at the time the injury occurred it did carelessly, negligently, and recklessly furnish and provide an unsafe, defective and dangerous mangle for her to do her said work upon, and directed her to work with such dangerous and unsafe machine; that it was dangerous, unsafe and defective in this: That it had no reasonably safe and proper "guard," such as such machines should have, the guard being for the special purpose of protecting workmen in operating the machine; that the guard was twisted and bent out of its proper shape, so that it furnished little or no protection; that, as a result of the guard being twisted and bent, the machine became dangerous, defective and unsafe, by reason of which the injury was occasioned.

The defendant admits the employment and injury, but denies all the other material allegations of the complaint. "Further answering the said amended complaint, the defendant avers that

such injuries as the plaintiff received were received in consequence of the ordinary risk attendant upon the employment in which she was engaged, and for which she was employed, and which she had assumed; and that whatever defects there may have been in the said mangle, if there were any, were fully known to the plaintiff at the time she was injured and for a long time theretofore." Defendant also pleads contributory negligence. No point is made in the brief as to her alleged negligence. A replication was filed denying the new matter of the answer.

As to the facts in the case: It is undisputed that the plaintiff was seriously injured. The plaintiff was in her twenty-second year when she was hurt. In addition to the facts alleged in the complaint, the circumstances further appearing from plaintiff's own testimony are as follows: She says she was employed in the beginning to iron handkerchiefs and help with other ironing by hand, and, in addition to working the neckband ironer, she ironed handkerchiefs and plain clothes by hand, and that was all she was employed to do. She was put to work on the mangle by the man who employed her. A few days after she came to the place she was asked by the foreman to go and help on the mangle. She described in her testimony the machine called the "mangle" with great particularity, and showed that she was familiar with the manner of its working. On the second or third day she was directed to help on that machine. Part of the time she folded clothes and part of the time she would feed the machine. She says that she "helped out on it sometimes every day for a few days, and then again it would be a week or a few days that I didn't work on it at all. I did a little of everything, but I did more folding and shaking out than I did feeding." At the time a Mrs. Prickett, acting as "forelady," gave her orders to work on the mangle in the absence of the foreman. "About one-half of the time I was there I didn't work on the mangle at all. No more than three or four days out of the week would I feed the mangle, and sometimes I didn't do that, but helped on it. I didn't feed on it as much as I folded or shook out. On the same day we might do some feeding, some

folding, and some shaking out. There was a guard across the mangle, but the guard was sprung in the center. The guard is a brass rail that goes along over the brass plate that you push the clothes in under. At the ends [of the guard] I could only just get my fingers under it, but in the center I could easily put my hand under it. When the guard-rail was turned down you could not put anything under it, so it must have been sprung an inch or more. When I was employed there the guard was kept turned up. I never had any trouble in operating the mangle. On the first day of May I was hurt on it. We were putting some tablecloths in. The man stood at my right. He was holding one end of it, and I was holding the other, and we put it through the second time, and it was wrinkled in the center, and I had my right hand holding it down in the center to go smooth, and the first thing I knew, my right hand was caught between the rollers. The rollers were hot, being heated with steam, and revolving fast. My hand went up to the wrist." Again she stated, "I could not get my fingers under more than half way" at the ends of the guard-rail. The distance between the guard-rail and the rollers was about three or four inches. The rail protects the hand by striking it, and when the hand strikes the rail, one would know that the hand cannot be put further under and "you would pull it back very easily." At the time she was paying strict attention to her work, trying to get a wrinkle out of the tablecloth. "I have seen the mangle at 'Beck's' laundry often, and I saw it when they first put it up. I had worked for or with Mrs. Beck. I worked at the old Parisian laundry. That was about five years ago, if I remember right. I was employed at the laundry at that time. I worked there from June until December, five years ago. I was neckband ironer there, and occasionally I would be sent over to the mangle, but I almost always folded there. If I were operating the neckband ironer and that work was completed, I was sent to the mangle. I seldom worked at the mangle at Beck's. I don't believe I ever fed on it. I saw the machine operate while there. That was in 1901." After quitting Beck's she went later to work for the Union

laundry, which was the old Parisian laundry. "I had worked at that place about two years before. They had the same instrument the Union laundry had. I am certain that the guard-rail was bent in the middle  *  *  *  and I often heard the girls speak about it, and you could easily see it was bent. I knew it was bent some when I went to work there. It had been that way of my own knowledge. Anyone operating the machine could see that it was bent. I am positive of that. I didn't work more than fourteen or fifteen months in laundries altogether. I knew *  *  *  if the hand should go between these two rollers it would be squeezed, and, of course, burnt."

A very able brief has been filed by each of the contending parties. The case was tried in the district court in Helena, in department No. 1. On motion, a nonsuit was granted. The case was afterward transferred to department No. 2, and a new trial was granted. The appeal is from the order granting a new trial.

Seven specifications of error are set out in the brief of counsel for the appellant, the defendant company. The first one—that is to say, that the court erred in granting respondent's motion for a new trial—includes all.

The first point raised is that the statement on motion for a new trial does not contain any recital that all the evidence introduced at the trial is contained therein, and that the only thing in the record to lead to such conclusion is the certificate of the judge settling the statement on motion for a new trial. All that is necessary for us to say on this point is that it has been heretofore settled by this court, and that it is no longer a matter of dispute, rightly or wrongly, that, when the judge in making his certificate (settling the statement) adds to it a recital that 'the foregoing statement contains all the evidence,' it is sufficient. (*Passavant* v. *Arnold, ante,* p. 513, 87 Pac. 905.)

The second point is that the complaint is insufficient in that it does not state that the defect in the mangle was known to the respondent company, or that it ought to have been known to it. There is not any presumption that the defendant in such a case knows of latent defects, if any. The complaint alleges sufficient

to show that this was a patent defect, and therefore it follows that defendant was charged with knowledge of its existence. But in this case the defect was apparent to any person looking at the machine, and there is sufficient allegation of knowledge on the part of defendant.

The defendant attempts in its answer to make two defenses: (1) Contributory negligence on the part of the plaintiff; and (2) assumption of risk, the latter being the one relied upon. The facts in this case show that Miss Coulter, without compulsion, worked several times a week during a period of about two months upon and about this machine, and that she was thoroughly familiar with the construction and operation of the same. The defect was known to her from the beginning and had been called to her attention by her fellow operators at the start. She saw the defect and she states that she knew the danger to herself. She was twenty-one years of age, and had worked for fourteen months in laundries which had these machines. She had worked on a mangle at another place. Query: Did she assume the risk? She saw the defect and realized the danger to herself, and continued in the employment at this machine for a long period of time until she was injured.

Section 2662 of the Civil Code is as follows: "An employer must in all cases indemnify his employee for losses caused by the former's want of ordinary care." The position of the respondent here is that this section precludes any defense on the part of the defendant employer, if he has not used ordinary care in furnishing ordinarily safe appliances. There is not any point made in this case, and the evidence does not disclose any facts to support it, that Miss Coulter had notified the defendant company of the defect and danger and had been promised that it should be remedied. And even if she had, under the authority of *Limberg* v. *Glenwood Lumber Co.*, 127 Cal. 598, 60 Pac. 176, 49 L. R. A. 33, and others too numerous to mention, she would only be excused for remaining in the dangerous employment for a reasonable period after such notification of the

employer and his promise to remedy the same. No such condition is shown in this case.

If there were conflicting testimony as to whether or not this girl saw the defect and realized her danger and was, because of want of age or inexperience, incapable of arriving at a correct.conclusion as to the situation, then such a case should have been submitted to a jury under proper instructions. But the testimony is all one way, indisputably supporting the theory of appellant that respondent knew and realized the defect and danger incident thereto, then, in case the cause had been submitted to a jury, there being no conflicting evidence on the subject, if the jury had found for the plaintiff, it seems to us that the court would have been compelled, on a proper motion, to set the verdict aside and grant a new trial. Such being our view, it seems to us that there is no other conclusion to draw than that the court should have taken the case from the jury, as it did. Respondent's counsel in his brief says: "The testimony fully shows that the guard was in a dangerous and defective condition during the entire period of time plaintiff worked for defendant, *and everybody knew it.*" In other words, the facts in the case as disclosed show that plaintiff knew the danger and assumed the risk. Thereby she made a contract, not against public policy as appears to us, to assume such risk.

We do not think that the defense of assumption of risk is pleaded explicitly in proper form and language, but the case having been tried upon that theory of the defense, and the plaintiff's testimony showing that she had no case, nonsuit was proper although that defense was not properly pleaded. (*Bier* v. *Hosford*, 35 Wash. 544, 77 Pac. 867.)

Under a statute similar to ours, adopted with the Codes of California of 1872, the supreme court of that state twenty-seven years thereafter—that is, in 1899—in a personal injury case (*Limberg* v. *Glenwood Lumber Co., supra*) held that: "Notwithstanding the negligence of a master in furnishing the servant with defective appliances, the servant assumes the risk of working therewith, and impliedly agrees to release the master from

liability therefor if he either continues to use them with knowledge of their dangerous character and without objection or protest, or continues to use them with like knowledge for an unreasonable time, after notification given to the master of their defective character, and after the servant has no right to expect that the defect will be remedied.'' The court says that it is not a question ''of contributory negligence upon the part of the plaintiff, but rather: Did plaintiff assume the risk of working with these defective appliances? If there had been an express contract between the master and servant that the work should be done without a seat to the wagon, and with these identical lines, clearly that agreement would have barred a recovery in this action. * * * While the servant only assumes the dangers and risks necessarily incident to the work to be performed, he may, by contract, either express or implied, also assume the risk of working with defective appliances. Indeed, many cases go further and sustain the proposition that, where the servant proceeds at the outset to perform his work with defective appliances, having knowledge of the defect, then an implied contract arises to the effect that he assumes the risk—especially so if he is aware of the danger surrounding him by reason of the defect; and to say that the servant assumes the risk is but another way of saying that he impliedly agrees to release the master from liability. * * * And we know of but a possible exception to the rule, and that would be a case where the servant, though aware of the defect, was not aware of the danger incident to it. That exception cannot be urged here.''

This *Limberg Case* was one in which plaintiff sued for damages for injuries alleged to have been caused by the want of ordinary care on the part of the defendant, in that he failed to furnish ordinarily safe appliances to the plaintiff after notification of the alleged defects, in that Limberg, being a driver of a lumber wagon, had furnished to him driving lines which were too short and a wagon without a seat, the allegation being that because of these defects in the appliances, he, under certain circumstances, fell from the wagon and received serious injuries.

The California supreme court in *Hennessy* v. *Bingham*, 125 Cal. 635, 58 Pac. 200, and *Matthews* v. *Bull* (Cal.), 47 Pac. 775, while considering section 1971, Civil Code of California (similar to our section 2662, *supra*), recognizes the doctrine of assumption of known risk as applicable where there has been that want of ordinary care mentioned in section 1971 (our section 2662).

The clear inference to be drawn from the language of this court in *Coleman* v. *Perry*, 28 Mont. 1, 72 Pac. 42, is that the doctrine of assumption of risk applies in this state under our Code in such a case as the one before us now. The injury occurred in 1896, but section 2662, *supra*, was not cited to the court in the *Coleman Case*. The section has never, since its enactment in 1895, been invoked to this court except in the case now before us.

In volume 20 of American and English Encyclopedia of Law, second edition, page 124, under the head of "Master and Servant," is found this statement: "If a servant knows of the danger in prosecuting the master's work, or if it is so patent that an ordinarily prudent man would have seen it, and he continues in the employment, without complaint, or without assurance of the master that the danger will be lessened or obviated, he cannot hold the master liable for injuries received in such employment, and the rule is the same with respect to those risks which first arise or become known to the servant during the service, as to those in contemplation at the original hiring." In support of this statement are cited *Limberg* v. *Glenwood Lumber Co.*, *supra*, and several hundreds of cases from forty states and territories, and from England and the United States. We do not think that the rule was changed by the adoption of section 2662.

The law being, in our opinion, as we have stated it, and the facts being uncontroverted, there seems to be no other conclusion to arrive at than that the assumption of risk appeared as a matter of law and the case was not one for the jury, and that the

nonsuit was properly granted on motion, and that the motion for a new trial was erroneously granted.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE HOLLOWAY: I dissent. The principal reliance of counsel for appellant, Union Laundry Company—in fact, for all practical purposes, it may be said, the only reliance—is upon this proposition: That although the risk to which Miss Coulter was exposed was an extraordinary one, still it was assumed by her by reason of the fact that such risk was known to her and the danger fully appreciated by her. The majority opinion declares that proposition to be the correct rule of law in this state. In my opinion, it is altogether impossible to reconcile such a conclusion with the provisions of our Civil Code. Independently of the statute, the majority opinion states a rule which has been quite generally followed, though in many instances with some modifications, by the courts of this country and in England. It may be said to be the common-law rule; but the mere fact that this rule is in effect in every state in the Union where there is no statute upon the subject, is no argument in favor of its enforcement in this state, where we have a statute declaring for a contrary doctrine.

Sections 2661, 2662, 4651 and 4652, among other things, provide:

"Sec. 2661. An employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is engaged.

"Sec. 2662. An employer must in all cases indemnify his employee for losses caused by the former's want of ordinary care."

"Sec. 4651. * * * In this state there is no common law in any case where the law is declared by the Code or other statute. * * *

"Sec. 4652. * * * The Code establishes the law of this state respecting the subjects to which it relates. * * * "

Of course, if the provisions of our Code were the same as the common law, they would be construed as continuations thereof; but that they are not such seems to me too plain for argument. Section 2661 simply declares, in effect, that the employee *only* assumes the *ordinary* risks of the business. The words "ordinary risks," as therein used, are to be given the meaning which they generally had at the time of the adoption of the Code. "Every risk which an employment still involves after a master has done everything that he is bound to do for the purpose of securing the safety of his servants is assumed, as a matter of law, by each of those servants. * * * The risks which are thus considered to have been assumed are those which are commonly described as 'ordinary.'" (1 Labatt on Master and Servant, sec. 3.) In other words, the servant's liability begins where the master's obligations end. But if the servant's injuries are attributable to the master's negligence, the risks to which the servant is exposed are not ordinary ones, and the master must indemnify him. This is the language of section 2662 above, in terms so plain that it seems to me they cannot be misunderstood.

To say that a servant, then, assumes any other than ordinary risks of the business in which he is engaged seems to me to render these two sections absolutely meaningless. The legislature evidently intended that these two sections, with section 2660, should form a complete Code upon the subject of the master's liability to the servant. The reason for the rule established by the Code is, that assumption of risk is a matter of contract, and at the time of making the contract of employment the parties cannot be said to have in contemplation any other than ordinary risks. Into every contract of employment there is, then, implied, on the part of the master, the promise to exercise reasonable care to furnish the servant with a reasonably safe place in which to work, reasonably safe appliances with which to work, and reasonably competent fellow-servants with whom to work; and on the part of the servant there is the implied agreement that he will assume the ordinary risks of the

employment, but, as said above, the servant's obligation only begins when the master's ends.

So far as our investigation discloses, the only other states having similar statutes are North Dakota, South Dakota, and California, and in not a single instance in any of these states can it be said that a case has been decided where the question of the servant's assumption of an extraordinary risk has been considered with reference to the statute. In *Matthews* ·v. *Bull*, the court was considering the question of the assumption of an ordinary risk. In *Hennessy* v. *Bingham*, it is only by the merest inference that it may be said that the court expressed itself upon the question now under consideration, and even such expression is nothing but *dictum*, as it was not involved in the decision of the case. In *Limberg* v. *Glenwood Lumber Co.*, the statute is not even mentioned. Our sections above were not mentioned or considered in *Coleman* v. *Perry;* and while it is true that for eleven years these personal injury cases have been considered in this state apparently without any reference to our statute, this fact does not appeal to me as an argument in justification of a decision, the direct effect of which, in my judgment, is to repeal section 2662 above. In my judgment, if our Code sections 2661 and 2662 mean what they say, there are not any circumstances under which a servant impliedly assumes an extraordinary risk.

Rehearing denied February 2, 1907.