Argued February 15, reversed and remanded April 27, 1922.

# CHEFFINGS *v.* HINES.

### (206 Pac. 726.)

**Master and Servant — Defects in Railroad Motor-cars Held not "Proximate Cause" of Injury in Collision.**

1. Deceased, an experienced section laborer, alighted from the first of two railroad motor-cars proceeding in same direction on a straight track, and got on the second car to assist in repairing it after directing the first car to proceed, and, while he was working on the second car and permitting it to run without keeping a lookout, it collided with the first car, which had stopped. *Held,* that the defects in the cars were not the "proximate cause" of the injury, which in law refers to the person producing it.

**Master and Servant—"Assumption of Risk" Held to Defeat Recovery for Injury in Collision Between Motor-cars.**

2. Deceased, an experienced section laborer, alighted from the first of two railroad motor-cars proceeding in same direction on a straight track, and got on the second car to assist in repairing it after directing the first car to proceed, and, while he was working on the second car and permitting it to run without keeping a lookout, it collided with the first car which had stopped. *Held* that recovery under the federal Employers' Liability Act was defeated by deceased's "assumption of risk," which is limited to risks which are open and obvious.

From Marion: PERCY R. KELLY, Judge.

Department 2.

The defendant is a railway corporation engaged in interstate commerce. The plaintiff is prosecuting this action as administratrix of the estate of Charles Cheffings, deceased, to recover damages for the death of the decedent while in the employment of defendant. The action is brought under the Federal Em-

---

1. Proximate cause and intervening condition, see note in 1 Ann. Cas. 230.

The question of abrogation of assumption of risk by federal Employers' Liability Act is discussed in notes in Ann. Cas. 1915B, 481, Ann. Cas. 1917D, 922, 47 L. R. A. (N. S.) 62, and L. R. A. 1915C, 69.

Authorities passing on the question as to servant's knowledge as an element of defense of contributory negligence in entering and remaining in employment are collated in a note in 49 L. R. A. 33.

ployers' Liability Act. Cheffings died on March 26, 1918, from the effects of injuries received on that date by the collision of motor-trucks engaged in conveying employees of the defendant to their work on its tracks. He was fifty-six years of age, the husband of plaintiff, and the father of Floyd Cheffings and Wesley Cheffings, twenty-four and twenty-nine years of age.

Cheffings was one of what is known as, and commonly called, an extra gang, which had for its duties the fixing and repairing of the track, roadbed and lines of defendant company.

The complaint alleges:

"That upon the morning of the twenty-sixth day of March, 1918, Cheffings reported for duty at Aumsville, Oregon, and was instructed to go with said extra gang. to work upon the said defendant's tracks and roadbeds at a point called and known as Kipheart Bluffs."

that the defendant furnished two motor-trucks for transporting the crew, and that these motor-trucks were being used by the extra gang at the time of the fatal accident. The complaint then avers:

"That on the morning of the said twenty-sixth day of March, 1918, and for a long time prior thereto, the said motor-car upon which the said Charles Cheffings was transported, as well as the other motor-car used in conveying and transporting the said extra gang to and from its work, was out of repair and in an unsafe condition, as follows: the spark plugs used in connection with the said gasoline engine upon said motor-cars were dirty, filthy, covered with carbon, and otherwise out of order, and that the wiring upon said gasoline engine was faulty, old, broken and out of repair, and that the carburetors upon said motor-cars were dirty and so out of order that the particular car upon which the said Charles Cheffings was being transported would

run and then stop, being unsteady in its operation and uncertain as to whether it would go or not, and that the brakes upon the said motor-car upon which the said Charles Cheffings was being transported were out of repair and inadequate for stopping said motor-truck, and in order to keep said motor-car upon which the said Charles Cheffings was being transported, going, at all, it was necessary for said employees to work with said engine and said carburetor and said wiring while the same was in operation and going upon defendant's tracks or the same would soon stop, and in order to work with said carburetor and gasoline engine it was necessary for the employees riding upon said motor-car to get upon their hands and knees so as to reach said gasoline engine as aforesaid. * * While the said Charles Cheffings and the other employee of defendant company were upon their hands and knees working with the said engine and carburetor * * , the first motor-car became out of order and suddenly stopped and that the employees being transported thereupon gave no warning or signal of its sudden stopping upon the tracks of the defendant company, and allowed and permitted said motor-car to remain upon the tracks of said defendant company, and while the said Charles Cheffings was so operating the second motor-car as aforesid, upon his hands and knees, the said second motor-car operated as aforesaid suddenly approached the first motor-car standing upon the tracks and on account of the inadequacy of the brakes upon the said second motor-car the employees riding thereon were unable to stop said motor-car, and the same ran into the first motor-car, throwing the said Charles Cheffings forward against the iron gas-pipe upon said motor-car, as aforesaid, striking him in the neck and causing great injuries to the neck, head and body, * * from which said injuries he died * * ."

Plaintiff avers that the death of Cheffings resulted from the "carelessness and negligence of the defendant company, in the following particulars":

"First. The said defendant company was careless and negligent in not furnishing safe means of transportation for the said Charles Cheffings, and in furnishing to the said extra gang for the transportation thereof motor-cars which were worn out, inadequate, out of order and repair and in the condition the said motor-cars were in as above described.

"Second. In permitting said first motor-car to suddenly stop and remain upon the tracks of defendant company without placing some signal or method of warning the approaching second motor-car to the rear of the said first motor-car, and thereby warn said second motor-car that the first car was standing upon the track of the defendant company.

"Third. In furnishing a motor-car for the transportation of the said Charles Cheffings with a gas-pipe in the position in which said gas-pipe was placed upon said motor-car, as aforesaid."

The defendant denies all negligence and damages charged to it, and for a first further and separate affirmative answer alleges:

"That said accident was caused solely and alone by the negligence and carelessness of said Charles Cheffings in failing to keep any lookout for the gasoline motor-car which had preceded the car he was operating."

For a second further, separate and affirmative answer and defense to plaintiff's amended complaint, the defendant alleges:

"That the said Charles Cheffings was, at the time of said accident, an old and experienced section laborer, and acting foreman, and familiar with the manner and method of operating gasoline motor-cars; that he knew, understood and appreciated that it was his duty to inspect and maintain both of said gasoline motor-cars in good order and condition, and knew and appreciated the risk which he incurred in not inspecting and maintaining said cars in good condition and order, and well knew, under-

stood and appreciated that if he attempted to oper-
ate said gasoline motor-car without looking ahead
for obstructions, and negligently and carelessly paid
no attention to the track ahead of said moving car,
that said procedure was dangerous and unsafe,
and that he knew that he had instructed the other
gasoline car to go ahead of the car which he was
operating and knew and understood that it was not
at all unusual for said motor-cars to stop and ob-
struct the track, and that he knew, understood and
appreciated the danger and likelihood of a collision,
with resulting damage, in case the first motor-car
stopped on the track, and knew, understood and ap-
preciated the danger of operating said second gaso-
line motor-car at a high rate of speed without keep-
ing a lookout ahead for obstructions upon the track,
and the liability and danger of collision with the
first gasoline motor-car in question was open, ap-
parent and obvious to the said Charles Cheffings,
and occurred on a straight piece of track, where
there was nothing obstructing his view, and he well
knew, understood and appreciated, or by the exer-
cise of any care or caution should have known, un-
derstood and appreciated, the danger of colliding
with the preceding motor-car under such circum-
stances, and he knew, understood and appreciated
that it was his duty, as acting foreman, to inspect
and maintain both of said gasoline motor-cars in
good condition and repair, and knew, understood
and appreciated that if the car which he was oper-
ating did collide with the preceding gasoline car
which had stopped upon the tracks near Shelburn
Station, that there was great danger and likelihood
of the occupants of said cars being injured; that
by reason thereof Charles Cheffings assumed any and
all risk and danger of injury which might happen
or occur to him by reason of said accident; that the
accident herein referred to is the same accident de-
scribed in plaintiff's amended complaint.''

Upon trial, a general verdict and a special verdict
were found and returned by the jury, in language
following:

"General Verdict.
"(Title.)

"We, the jury in the above-entitled civil action, find for the plaintiff in the sum of $8,000, and in the further sum of $——— for pain and suffering of Charles Cheffings after his injury, and before his death. This verdict is unanimous."

"Special Verdict.
"(Title.)

"We, the jury in the above-entitled civil action, return the following special verdict, in answer to the following question:

"Question: If you find that the defendant was negligent in failing to use reasonable care to furnish Charles Cheffings with a reasonably safe means of transportation as alleged in the complaint, do you further find that such defects were obvious and known to Charles Cheffings?

"Answer: We find affirmatively to both parts of the above question, also unanimously."

Thereupon, the defendant filed a motion for judgment on special verdict, which was denied by the court, from which order the defendant appeals.

Defendant also asserts error of the court in denying its motion for a directed verdict, and in refusing certain instructions and giving certain others objected to by defendant.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Roscoe C. Nelson* and *Messrs. Smith & Shields,* with an oral argument by *Mr. Nelson.*

For respondent there was a brief and oral argument by *Mr. W. C. Winslow.*

BROWN, J.—In the case of *Atchison etc. Ry. Co.* v. *Calhoun,* 213 U. S. 1, 7 (53 L. Ed. 671, 29 Sup. Ct.

Rep. 321, 322, see, also, Rose's U. S. Notes), it
was aptly observed by Mr. Justice MOODY that:

"Few questions have more frequently come be-
fore the courts than that whether a particular mis-
chief · was the result of a particular default. It
would not be useful to examine the numerous decisions
in which this question has received consideration,
for no case exactly resembles another, and slight
differences of facts may be of great importance. * *
The law, in its practical administration, in cases of
this kind regards only proximate or immediate and
not remote causes, and in ascertaining which is
proximate and which remote refuses to indulge in
metaphysical niceties."

The following constitutes a fair statement of the
facts in the case at bar, as we understand them:

As shown by the statement in the case, plaintiff,
for grounds of recovery, alleges negligence in three
respects. Upon trial, the second and third items
of averred negligence were, by order of the court,
excluded from the consideration of the jury. The
court held, with respect to the element of alleged
negligence relating to the gas-pipe, that "there is
nothing in the record to support the view of plain-
tiff that such constituted negligence," and that

"As to the element of failing to station signals
to disclose that the first car was standing upon the
track constituting negligence, as claimed by the
plaintiff, in the opinion of the court has not been
supported, for the evidence disclosed that the car
had just stopped when the collision occurred, and
had not been standing upon the track; therefore no
warning of a condition that did not exist would be
enjoined upon the defendant."

Herman Lewis was the foreman of a crew of em-
ployees of the defendant commonly designated as
an "extra gang," and they had been instructed to
work for the defendant at Kipheart Bluffs situate

some fifteen miles from Aumsville on the Corvallis
& Eastern Branch of defendant's lines operating
from Albany eastward by way of Mill City to De-
troit, Oregon. At the time of the accident the fore-
man was ill, and the deceased was, and for ·some
time prior thereto had been, acting as foreman. For
purposes of transportation the employees were fur-
-nished by the defendant with two motor-cars termed
herein Car A and Car B. On the twenty-sixth day
of March, 1918, the crew, in going to Kipheart in
accordance with previous instructions, went from
Aumsville, a town situate on the Woodburn-Spring-
field branch of the defendant's road, to Shelburn,
a distance of six or seven miles, and there trans-
ferred to the tracks of the Corvallis & Eastern
branch thereof. Cheffings rode on Car A as far as
Shelburn. Car B had not run well. It had stopped
a number of times before reaching Shelburn, and
at that place Cheffings, the acting foreman, trans-
ferred all the crew to Car A and directed them
to proceed to their objective point for the purpose
of going to work. Emery Bino, a member of the
crew, was picked up at Shelburn and was directed
by Cheffings to accompany him on Car B for the pur-
pose of repairing it. Bino testified that he got on
the car with Cheffings at his order; that Cheffings
had instructed the other members of the crew to get
on Car A and proceed to their destination, and that
he directed him (Bino) "to fix the car (Car B) and
make it go." He further testified that he cleaned
the spark plugs "and started to jiggle the carbu-
retor"; that the car in the meantime picked up speed
which he estimated to be from twelve to fifteen miles
in a distance of a little over six hundred feet.

"Q. Now, the car which you and Mr. Cheffings were on, who was running the car, you or Mr. Cheffings?

"A. Mr. Cheffings. * *

"Q. You say there was a train shortly due each way?

"A. Well, it would be due pretty quick. I don't know what time. * *

"Q. And he said, 'Better hurry up and get started'?

"A. Yes, sir. * *

"Q. The first intimation you had of danger was Cheffings yelling to you, 'Look out'?

"A. Yes.

"Q. Then when you looked up you were only a few feet from this other motor-car?

"A. Yes, sir.

"Q. Was there anything else on the track, or was there anything between the intersection of the station at Shelburn and the tool-house where the accident occurred, any obstruction on the track?

"A. No.

"Q. Any curve there or anything?

"A. No. * *

"Q. Did you have time to apply brakes or anything like that?

"A. No. * * "

J. H. Simpson, another member of the crew, testified that Car B stopped several times between Aumsville and Shelburn, and that upon reaching Shelburn those of the gang riding upon Car B were, by Cheffing's order, transferred to Car A and directed to proceed; that when Car A was some distance out of Shelburn it stopped on account of trouble with the engine, and that Mr. Darby went to work with the engine; that Cheffings and Bino were working with Car B, "which was coming pretty slow," and that "it kept on coming pretty slow and they kept working with it"; that Bino was

on the left-hand side of the car working underneath, and Cheffings was on the right-hand side down on one knee, with his left hand up on the side and his right hand underneath, where the machinery was; that witness first saw Car B when it was about thirty feet away; that the crew were on Car A when they saw Car B approaching and they holloed and jumped off.

"Q. What did Mr. Cheffings and Mr. Bino do after their attention was directed to the fact that your car was on the track?

"A. Mr. Cheffings got up and reached for the brake. About that time the two cars hit and he missed the brake and the railing on the front end of the car struck him under the chin.

"Q. What was the result of the collision?

"A. Well, smashed the cars up * * .

"Q. Now, could you see from where you were that he (Cheffings) wasn't looking the way the car was going, or that he was looking down or some other way from the way in which the car was going?

"A. Yes, I could see he was looking underneath, about where the engine—

"Q. He wasn't looking down the track, the way the car was going?

"A. No."

The term "proximate cause" is thus defined:

"In law 'proximate cause' refers to the person producing it, as against 'proximate cause' in logic, which refers to the moving influence itself." Words & Phrases (N. S.).

It is there said:

"In discussing legal causation, the phrase 'proximate cause' does not necessarily mean that which is nearest, but refers rather to the efficient cause, and in this sense is sometimes referred to as the immediate and direct cause, as opposed to remote; and the words 'proximate,' 'immediate' and 'direct' are fre-

quently used as synonymous.'' Words & Phrases (N. S.).

Again:

''In determining the proximate cause of an injury, it is not material whether it is the first or last in the succession of events resulting therein, provided it is the responsible cause.'' Words & Phrases (N. S.).

''Proximate cause means probable cause.'' Words & Phrases (N. S.).

1. It appears from the evidence in the instant case that the alleged defects in Car A and Car B, or either of them, were not the proximate cause of the injury.

The phrase ''assumption of risk'' has been defined thus:

''The standard of care which the law requires of a servant is that which a reasonably cautious and intelligent person would exercise under the same circumstances, and the hazards and risks attendant upon his employment which he assumes are those, which are open and obvious, of which he ought to have known by using reasonable care.'' Words & Phrases (N. S.).

The following is peculiarly applicable to the case at bar:

''The doctrine of 'assumed risk' must be limited to risks which are obvious and can be understood by a servant of ordinary intelligence, or at most to those dangers which should be anticipated by the servant, as a result of obvious conditions, or may reasonably be expected to be known by him.'' Words & Phrases (N. S.).

In the case of *Wintermute* v. *Oregon-Wash. R. & N. Co.*, 98 Or. 431, 436–439 (194 Pac. 420, 421), Mr. Chief Justice BURNETT, speaking for this court, said:

''Another proposition well established by the precedents is that the defenses of assumption of risk

and of contributory negligence are separate and distinct in legal effect, although as applied in practice they may largely rest upon the same state of facts. This rule is thus stated in a note in 49 L. R. A. 33, 50, reporting the case of *Limberg* v. *Glenwood Lbr. Co.,* 127 Cal. 598 (60 Pac. 176, 49 L. R. A. 33), reading as follows: 'The doctrine of assumed risks obtains without necessary reference to the existence of negligence. If the servant, with knowledge of a defect in the master's premises, and of a danger and risk incident thereto, continues in the service of the master without proper notice to the latter he assumes the risk incident to the service and growing out of the existence of the defect, and this without regard to the degree of care which he may exercise in the performance of his labors (citing many authorities).' * * The principle established by such cases is that assumption of risk is an implied condition of the contract between the employer and the employee, while negligence of the employee contributing to his hurt arises from his own tort. * * The rule is thus stated in *Ball* v. *Gussenhoven,* 21 Mont. 321 (74 Pac. 871): 'If the defense of assumption of risk is maintained, the question of the existence of contributory negligence does not arise, because, if plaintiff assumed the risks of the employment, he cannot recover, even if he exercised the highest degree of care.' * * Lastly, it is sound doctrine that notice or knowledge and appreciation of the danger are indispensable to the assumption of risk."

In the case of *Brundage* v. *Southern Pac. Co.,* 89 Or. 483, 504, 509 (174 Pac. 1139, 1145), Mr. Justice HARRIS wrote:

"The defense of assumption of risk is available to the defendant: *Jacobs* v. *Southern Ry. Co.,* 241 U. S. 229 (60 L. Ed. 204, 36 Sup. Ct. Rep. 588, see, also, Rose's U. S. Notes); *Morata* v. *Oregon-Wash. R. & N. Co.,* 87 Or. 219, 225 (170 Pac. 291). * * Framhein [the decedent] assumed all the risks that were ordinarily incident to his employment and also

extraordinary risks which he knew or ought to have known and appreciated: *Galvin* v. *Brown & Mc-Cabe,* 53 Or. 598, 611 (101 Pac. 671.)''

According to the record, Cheffings (the decedent) had knowledge of the defects existing in the motor-car, and by his own direction created the dangerous conditions under which he worked, and voluntarily assented thereto.

2. As shown in the evidence, the fatal collision occurred at a point about six hundred feet from Shelburn, on a straight track, where there was nothing obscuring the view. Furthermore, the foreman had directed Car A to go forward. By his own arrangement he followed on, and operated, Car B. Under his order Emery Bino worked on Car B while it was running, for the purpose of repairing the carburetor, cleaning the spark-plugs and making the car go. Cheffings was not only an experienced railroad employee, but he knew that cars and trains of cars were operated upon the railroad track over which he was traveling. Notwithstanding this fact he, while operating the motor-car, not only failed to watch the track ahead in order to preserve the safety of Bino and others, including himself, but he got down upon his hands and knees, probably for the purpose of helping Bino fix the car, and permitted it to run without keeping a lookout ahead. In the meantime, something went wrong with the engine of Car A and it stopped. Car B approached within a few feet of car A before Cheffings discovered the obstruction upon the track. When he suddenly saw the proximity of Car A he got up, reached for the brake and missed it, the cars collided and the railing on the front end of his car struck him under the chin, inflicting the injury from which he died. According to the undisputed testimony, the

deceased was the man in charge of the crew; the man who ordered Car A to go ahead; the man who directed the operation of the cars; the man who made the situation. The condition of the record establishes that Cheffings knowingly assumed a risk that was obvious. The defendant is not an insurer.

The court committed error in failing to direct a verdict for the defendant on its motion at the conclusion of the evidence. This error was fundamental. Hence it is not necessary to consider the other assignments.

As stated in *State* v. *Moss,* 95 Or. 616, 629 (182 Pac. 149, 188 Pac. 702):

"It is possible that the prosecution may be able to make a better case at another trial, but a conviction (judgment) cannot be sustained rightly on the record before us."

The judgment rendered in favor of the plaintiff in the court below is reversed and the cause remanded to that court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BEAN, HARRIS and McCOURT, JJ., concur.