FREMONT BREWING COMPANY V. BRODER HANSEN.*

FILED JULY 1, 1902. No. 11,946.

Commissioner's opinion, Department No. 3.

1. **Servant:** RISK OF EMPLOYMENT: NOTICE OF LAW OF GRAVITATION. A servant assumes the ordinary risks and dangers of the employment upon which he enters, so far as they are known to him, and so far as they would have been known to one of his age, experience and capacity by the use of ordinary care; and he is bound to take notice of the ordinary operation of familiar laws of gravitation, and he assumes the risks necessarily incident thereto.

* Rehearing allowed. Judgment below affirmed. See opinion on page 462.

2. **Evidence:** DIRECTING VERDICT. When the evidence introduced by the plaintiff is insufficient to prove a cause of action, it is the duty of the court, upon the request of the defendant, to instruct a verdict in his behalf.

ERROR from the district court for Dodge county. Tried below before HOLLENBECK, J. *Reversed.*

*Courtright & Sidner,* for plaintiff in error.

*Frank Dolezal, contra.*

AMES, C.

The defendant in error, who will hereafter be called the plaintiff, was employed by the defendant brewing company in the capacity of a general workman in and about its establishment. He was strong, healthy, mature and intelligent, and capable of handling heavy weights, in the doing of which the duties of his employment to a considerable extent consisted. In one of the rooms of the brewery was an iron tank, of dimensions, when in position for use, of about ten feet in length by nine and a half feet in width, and six feet in height. It had been lifted up for repairs and was resting upon one of its sides or edges. Along the sides were three so-called flanges, extending several inches from its body,—one at the bottom, one at the top and one midway between. The weight of the structure was between one and two thousand pounds, —probably about twelve to fifteen hundred pounds. The plaintiff, together with some fifteen or sixteen other employees of the company, were called upon to tip the tank over from its side so that its bottom would rest upon the floor in position for use. This was done by the foreman and several of the men lifting upon the upper flange, then resting upon the floor, so as to throw the tank forward towards the west, while the remainder of the force ranged themselves on the three other sides and grasped the middle flanges, for the purpose of steadying the motion and breaking the fall of the structure. The plaintiff came into the room after the operation had been begun, and,

in obedience to a direction by the foreman, took his place at what was then the upper, and after the task had been accomplished, the western side of the tank.   After the tank had been moved so far over as to shift its line or centre of gravitation, its motion was, as was natural, considerably accelerated, and when it reached the floor it caught underneath it one of the plaintiff's feet; inflicting an injury, to recover damages for which this action was brought.   The evidence adduced at the trial was that of the plaintiff alone.   The jury found a general verdict for the plaintiff and in response to especial inquiries, found that he was not guilty of negligence, but that the defendant was guilty of negligence, through or by its foreman, which "consisted in his neglect to properly direct and superintend the men ordered by him to turn over the tank."   We are unable to find in the record any sufficient evidence of such negligence.   The only evidence touching this matter to which counsel have called our attention is the following testimony by one of the men, a boiler-maker by trade, who was engaged in the operation, and who was called and examined by counsel for the plaintiff in part as follows:

Q.   Do you know what the proper and ordinary way of turning such a tank as this was would be?

A.   I guess I do, in my own way, while other men may have different ways.

Q.   You have worked at this kind of work you say for the past sixteen years,—this kind of work; that is, in the turning of large bodies of this kind, while you would be conducting the repair of the same?

A.   Yes, sir.

Q.   You may go on and state what would have been the proper and ordinary manner, method and way for the men handling such tanks, in such a position as this tank was in, to have turned it over?

A.   Well, in the position the tank was in, it would be just the way I would do it.

Q.   That is, you mean you would turn it over to the west?

A. Yes, sir.

Q. But in the manner of doing it, and as to the method of doing it, how as to that?

A. Well, that would be a proper method; of course, it all would depend, and that all together, whether you desired to let it fall, or whether you intended holding it. It would be just as you wished in the turning of it.

Q. Would you have that understood before you attempted to turn the tank?

A. Yes, sir.

Q. In that manner and in that regard would there be any orders given to the men previously?

A. Yes, sir.

Q. Orders to the men what to do?

Objected to as immaterial, irrelevant and incompetent. Sustained.

Q. Now, Mr. Sands, if plank had been put upon the floor to the west of the tank and where it was to have fallen, say plank of six inches in thickness, so as the tank would rest upon them,—such plank as that would that have been a fair device, to prevent the people from getting hurt under the tank in the process of turning?

A. Well, perhaps that would have been all right, if a person wanted to lower it over in that way; but for my part I would not have anything there or anything under it for the simple reason that it would not hurt the tank to let it fall, because it was all iron.

An attempt was also made to show that other appliances, such as "block and tackle" should have been used; but as the foregoing testimony indicates, it utterly failed, although the witness says such means might have been used as would "let the tank down easily," —a fact which is manifest without evidence,—but it was proved that there were men enough, present and engaged, to have taken the structure up and carried it away. From the foregoing it is plain, beyond dispute, that the employment of appliances would not have been in accordance with usage in such cases, and was not required by

ordinary prudence, and that the manner in which the tank was pushed forward and allowed to fall to the floor was such as was customary and proper under such circumstances. In what respect the management was at fault in failing to give previous directions for an ordinary, usual and prudent way of doing an act in an instance in which, by the plaintiff's own showing, the act was in fact done in that manner, we are unable to understand. The plaintiff, being a strong, healthy and intelligent man of mature years, and accustomed to the handling of heavy bodies, must have known that as the upper side of the tank should approach the floor, its motion would tend to become accelerated, and the ability of the men to restrain or control it would be diminished. In other words, he knew as well as any other person present the danger to be apprehended from a falling body of great weight, and the risk therefrom to those engaged in the operation. This risk he deliberately incurred as incident to his employment. The jury found, no doubt correctly, that he was not guilty of negligence, but they seem to have thought that without negligence the injury would not have been inflicted, and thereupon convicted the defendant of having been guilty thereof. Accidents of the most grievous character are continually happening without assignable fault or negligence by any body, and this case, so far as the record discloses, was an instance of that kind. Authorities are numerous and familiar to every lawyer that, to quote from *Motey v. Pickle Marble & Granite Company*, 74 Fed. Rep., 155, "A servant assumes the ordinary risks and dangers of the employment upon which he enters, so far as they are known to him and so far as they would have been known to one of his age, experience and capacity by the use of ordinary care"; and from *Walsh v. St. Paul & D. R. Co.*, 8 N. W. Rep. [Minn.], 145, "In performing the duties of his place, a servant is bound to take notice of the ordinary operation of familiar laws of gravitation, and to govern himself accordingly. If he fails to do so, the risk is his own. If the instrumentalities fur-

nished by the master for the performance of the servant's duties are defective, and the servant is aware of this, though not aware of the degree of defectiveness, he is bound to use his eyes to see that which is open and apparent to any person using his eyes, and, if he fails to do so, he can not charge the consequences upon his master." See, also, *Sullivan v. Nicholson File Co.*, 45 Atl. Rep. [R. I.], 549; *Norfolk Beet-Sugar Co. v. Hight*, 56 Nebr., 162.

It may be assumed that there was no other evidence in support of alleged negligence than that mentioned in the special finding of the jury, and none other has been brought to our attention by counsel, or, so far as we can ascertain, is disclosed by the record. Some complaint was made in the argument that the foreman assisted the men in lifting the tank from its position, and the assertion is made that perhaps more force was used than was requisite, and that by this means the structure was thrown forward with unnecessary violence, but the evidence, if any, to this effect, was so slight that the jury did not regard it as sufficient proof of negligence, and in this regard we agree with them.

The conclusion from the foregoing is that the evidence is insufficient to sustain the verdict, and that the defendant was entitled to the peremptory instruction, which it asked, for a verdict in its favor. It is therefore recommended that the judgment of the district court be reversed and a new trial granted.

DUFFIE and ALBERT, CC., concur.

By the Court: For reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and a new trial granted.

REVERSED AND REMANDED.

The following opinion was filed on rehearing January 8, 1903:

Commissioner's opinion, Department No. 3.

Evidence: FINDING. Evidence examined, and found to support the finding of the jury.

DUFFIE, C.

The former opinion in this case will be found on page 456. An examination of the authorities cited by the defendant in error in his brief in support of a motion for a rehearing, induced a doubt of the correctness of our first opinion in the case, and a reargument has convinced us that the question of the negligence of the brewing company, acting through its foreman, was one for the jury, and that its finding ought not to be disturbed. The facts are quite fully set out in the former opinion, and need not be repeated here. Hansen was employed as an ordinary hand about the brewery. He was not employed to repair the tanks in use, or to handle them while repairs were being made, but to assist in operating them when in use. It was not in the course of his regular employment to turn, or assist in turning, such tanks while being repaired, but this was a special work or duty imposed on him by his employer. The boiler-maker in charge of the repairs was not a regular employee of the brewing company, but a mechanic called in for that special purpose. He had two helpers of his own, and when ready to have the tank turned, not being able to do it with his own force, he asked either Muller, the foreman, or Benson, the engineer of the brewing company, to have it done. Muller, the foreman, ordered Hansen to assist in the work, and Hansen was the last man to get to the tank; and when he arrived there was no unoccupied place at the end of the tank from which the lifting was to be done, and Muller ordered him to go around to the side and assist in letting it down. Sands, the boiler-maker, testified as follows: "Some one said 'Yo, heave,' and in a short time the tank was in the air and then after the point of gravity was gone over, I ran to the other side

with my men and possibly five or six others,—there were four or five on each end—I don't know how many there was there; it seems to me like there were some on the west.   I don't think the tank was under control after it left the centre of gravity.   I think the tank fell all the way after it left the centre of gravity."   The work of turning the tank had commenced when Hansen entered the room.   He was ordered to take hold and assist in easing it down. There was no time for him to observe and calculate the danger.   He had a right, under the circumstances, to presume that the foreman who had charge of the work had instructed the men under his charge to handle the tank in such a manner that it should not fall after reaching the point of gravity, and thus injure Hansen in the manner that it did.   It is in evidence that there were men enough about the tank "to pick it up and carry it away," and this demonstrates beyond any question of doubt that the injury to the plaintiff was occasioned by the mismanagement and negligence of someone.   The jury has placed the blame on the foreman, finding specially that none of Hansen's fellow servants were negligent, and that the foreman neglected "to properly direct and superintend the men ordered by him to turn over the tank."   Again, the evidence discloses that it would have been proper to let the tank fall without attempting to ease it down, it being made of iron and not liable to injury.   Under these circumstances we do not think that it can be said that there was no question of mismanagement and negligence to submit to the jury, or that there was no evidence to support its finding.   When it is disclosed that the foreman had men enough to handle the tank safely if properly directed about the work, and in addition to this that there was no necessity of putting any of the workmen in danger by attempting to ease the tank down after it passed the point of gravity, we think it has been demonstrated, in the absence of explanation, that the party in charge of the work and having direction of the men was negligent in the conduct of the business.

We recommend that the judgment of the district court be affirmed.

ALBERT, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.