SORENSON, Respondent, *v.* NORTHERN PACIFIC RY. CO., Appellant.

(No. 3,735.)

(Submitted January 23, 1917. Decided February 16, 1917.)

[163 Pac. 500.]

*Personal Injuries—Railroads—Federal Liability Act—Master and Servant—Insufficient Assistance—Culpable Negligence— Assumption of Risk—Verdict Against Law.*

Personal Injuries—Railroads—Federal Liability Act—Assumption of Risk.
   1. The defense of assumption of risk may be interposed as a bar in an action, brought under the Federal Employers' Liability Act, when the personal injury or death complained of has been caused by a hazard which is incident to the particular business, or by a haz-

. ard which, though brought about by the failure of the employer to provide a safe place to work and safe appliances to work with, the employee knew or should have known of and appreciated.

[As to assumption of risk under Federal Employers' Liability Act, see note in Ann. Cas. 1915B, 481.]

Same—Master and Servant—Injury Due to Insufficient Assistance.

2. The failure of an employer to provide a sufficient number of competent employees to perform the work in hand with reasonable safety to all those engaged in its accomplishment is culpable negligence.

Same—Servant Overtaxing Strength—Liability of Master.  '

3. *Held* that the general rule that, being the best judge of his own muscular capacity, an employee who undertakes to lift, or assist in lifting, a heavy object while acting in the line of his duty, whether under the direct supervision of his superior or not, assumes the risk of injury due to overtaxing his strength, *held* not to apply where the injured person is of immature years or inexperienced in the work he was engaged in at the time.

Same—Assumption of Risk—Exception.

4. A servant does not, as a matter of law, assume a risk if the hazard incident to his employment requires knowledge or judgment not possessed by men of ordinary observation.

Same—Injury by Heavy Lifting—Liability of Master.

5. *Held,* under the above rules, that a section-hand, twenty-three years of age, without previous experience in lifting heavy rails, who while engaged in lifting one such rail thirty feet in length and weighing about 990 pounds, assisted by two others, a young man of nineteen and an old man of sixty-two, sustained a rupture, was not as a matter of law chargeable with assumption of risk, but that the question was properly submitted to the jury.

Same—Appreciation of Risk—Presumptions.

6. From the fact that plaintiff had, a short time before he was injured, seen four men lift another rail of the same size and weight, but under different conditions, he could not be presumed, as a matter of law, to have gained appreciative knowledge that the weight of the rail in the lifting of which he was ruptured was beyond the capacity of three men.

Same—Verdict Against Law—When not.

7. Since, under the evidence, the jury could properly have found either for or against the contention of appellant that plaintiff assumed the risk, their finding against it was not contrary to the law as declared in the instructions.

Same—Sufficient Assistance—Duty of Master.

8. The duty of the employer to provide, among other things, a sufficient number of men to perform the work in hand with reasonable safety to all those engaged in its accomplishment, is not discharged by providing such number in the first place, but requires that it be maintained during the progress of the work and each particular part of it.

*Appeal from District Court, Gallatin County; Ben B. Law, Judge.*

ACTION by William Sorenson against the Northern Pacific Railway Company. From a judgment for plaintiff, and an order denying it a new trial, defendant appeals. Affirmed.

*Messrs. Gunn, Rasch & Hall* and *Mr. W. S. Hartman,* for Appellant, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

The Federal Employers' Act abolishes the defense of the assumption of risk only when the violation by the carrier of a federal statute enacted for the safety of employees contributed to the death or injury of an employee. In all other cases such assumption of risk shall have its former effect as a complete bar to the action. (*Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, 8 N. C. C. A. 834; *Southern R. Co.* v. *Crockett,* 234 U. S. 725, 58 L. Ed. 1564, 34 Sup. Ct. Rep. 897; *Oberlin* v. *Oregon-Wash. R. & Nav. Co.,* 71 Or. 177, 142 Pac. 554; *Farley* v. *New York, N. H. & H. R. Co.,* 88 Conn. 409, 91 Atl. 650; *Truesdell* v. *Chesapeake & O. R. Co.,* 159 Ky. 718, 169 S. W. 471; *New York etc. R. Co.* v. *Vizvari,* 210 Fed. 118, L. R. A. 1915C, 9, 126 C. C. A. 632; *Lauer* v. *Northern Pac. R. Co.,* 83 Wash. 465, 145 Pac. 606; *St. Louis & S. F. R. Co.* v. *Snowden* (Okl.), 149 Pac. 1083.) The above law is so construed even though a state statute has abolished the defense of assumption of risk in cases other than those covered by the federal Act. A section-hand working on the track of an interstate road is engaged in interstate commerce. (*Pedersen* v. *Delaware etc. R. Co.,* 229 U. S. 146, Ann. Cas. 1914C, 153, 57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, 3 N. C. C. A. 779; *Zikos* v. *Oregon R. & Nav. Co.,* 179 Fed. 893; *Colasurdo* v. *Central R. R.,* 180 Fed. 832; affirmed in *Central R. Co. of N. J.* v. *Colasurdo,* 192 Fed. 901, 113 C. C. A. 379; *Louisville & N. R. Co.* v. *Kemp,* 140 Ga. 657, 79 S. E. 558.)

Employees assume the risk of injury from lifting heavy objects. (17 Am. & Eng. Ann. Cas. 240; *Stenvog* v. *Minnesota Transfer R. Co.,* 108 Minn. 199, 17 Ann. Cas. 240, 25 L. R. A.

(n. s.) 362, 121 N. W. 903; *Walsh* v. *St. Paul & Duluth R. Co.,* 27 Minn. 367, 8 N. W. 145; *Worlds* v. *Georgia R. Co.,* 99 Ga. 283, 25 S. E. 646; *Ferguson* v. *Phoenix Cotton Mills,* 106 Tenn. 236, 61 S. W. 53; *Texas & P. R. Co.* v. *Miller,* 36 Tex. Civ. 240, 81 S. W. 535; *White* v. *Owosso Sugar Co.,* 149 Mich. 473, 112 N. W. 1125; *American Brass Mfg. Co.* v. *Philippi,* 103 Mo. App. 47, 77 S. W. 475, 765.)

In a number of the cases cited above, where it is held the risk was assumed, the plaintiff did not ask for additional help nor protest in any manner when directed to lift the heavy object, while in the case at bar the plaintiff before lifting the first rail asked for assistance from his brother, which request, so far as knowledge on the part of plaintiff is concerned, was in effect the same as if he had suggested to the foreman that more men were needed, and then voluntarily proceeded to lift the object. (See, also, *St. Louis & S. F. R. Co.* v. *Snowden* (Okl.), 149 Pac. 1083; *Nephew* v. *Whitehead,* 123 Mich. 255, 81 N. W. 1083; *Haviland* v. *Kansas City etc. R. Co.,* 172 Mo. 106, 72 S. W. 515; *Bryan* v. *Southern Ry. Co.,* 128 N. C. 387, 38 S. E. 914; *Missouri O. & G. Ry. Co.* v. *Black* (Tex. Civ.), 176 S. W. 755.)

An employee is the best judge of his own lifting capacity, and the risk is upon him not to overtax it. (*Haviland* v. *Kansas City etc. R. Co.,* 172 Mo. 106, 72 S. W. 515; *Ferguson* v. *Phoenix Cotton Mills,* 106 Tenn. 236, 61 S. W. 53.) The fact that the employee is acting under the orders of his superior at the time does not alter the rule, even though he may have reason to believe that disobedience of the order will result in his dismissal. (*Worlds* v. *Georgia R. Co.,* 99 Ga. 283, 25 S. E. 646; *Haviland* v. *Kansas City etc. R. Co.,* 172 Mo. 106, 72 S. W. 515; *Leitner* v. *Grieb,* 104 Mo. App. 173, 77 S. W. 764.)

*Messrs. Keister & Bath,* for Respondent, submitted a brief; *Mr. H. D. Bath* argued the cause orally.

It is the duty of the master to provide sufficient help. (*Supple* v. *Agnew,* 191 Ill. 439, 61 N. E. 392.) This court has adopted the

ruling in *Supple* v. *Agnew,* 191 Ill. 439, 61 N. E. 395, in *Verlinda* v. *Stone & Webster E. Corp.,* 44 Mont. 223, 119 Pac. 573. The rule of law which enjoins upon the master the duty to provide his. servants with reasonably safe instrumentalities embraces the duty of providing proper and sufficient help and assistance, so that they may perform the work with reasonable safety. (*Peterson* v. *American Grass Twine Co.,* 90 Minn. 343, 96 N. W. 913; *Flike* v. *Boston & A. R. Co.,* 53 N. Y. 549, 13 Am. Rep. 545; *Booth* v. *Boston & A. R. Co.,* 73 N. Y. 38, 29 Am. Rep. 97; *Wright* v. *Southern Pac. Co.,* 14 Utah, 383, 46 Pac. 374; *Johnson* v. *Ashland Water Co.,* 71 Wis. 553, 555, 5 Am. St. Rep. 243, 37 N. W. 823.) This duty is an absolute and nondelegable duty. (*Alabama G. S. R. Co.* v. *Vail,* 142 Ala. 134, 110 Am. St. Rep. 23, 38 South. 124.) The fellow-servant doctrine will not be given the effect of defeating recovery against the master for an injury to a servant when it appears that the injury was due to the master's failure to furnish sufficient help. (*Boden* v. *Demwolf,* 56 Fed. 846.)

If injury results to a servant from the operation of a railroad train without sufficient help, the company is liable. (*Georgia Pac. Ry. Co.* v. *Propst,* 90 Ala. 1, 7 South. 635.) A master will be held responsible for his failure to employ enough competent persons to do his work safely at all times, as respects others employed. (*Hill* v. *Big Creek Lumber Co.,* 108 La. 162, 58 L. R. A. 346, 32 South. 372; *Louisville & N. R. Co.* v. *Semones,* 21 Ky. Law Rep. 444, 51 S. W. 612; *Bonn* v. *Galveston, H. & S. A. Ry. Co.* (Tex. Civ.), 82 S. W. 808.)

It will not be assumed that the employee knew, at the time of his injury, that the number of men employed to assist him was insufficient to do the work with reasonable safety to himself. (*McMullen* v. *Missouri K. & T. Ry. Co.,* 60 Mo. App. 231.) Whether or not the master in the particular case performed his duty of employing a sufficient number of men to do the particular work with reasonable safety to the employees is a question of fact to be determined by the jury. (*Southern Pac. Co.* v. *Lafferty,* 57 Fed. 536, 537, 6 C. C. A. 474, 15 U. S.

App. 193; *Denver S. P. & P. R. Co.* v. *Wilson,* 12 Colo. 20, 20
Pac. 340; *Supple* v. *Agnew,* 191 Ill. 439, 61 N. E. 392; *Harvey*
v. *New York, C. & H. R. R. Co.,* 88 N. Y. 481; *Wright* v. *South-
ern Pac. Co.,* 14 Utah, 383, 46 Pac. 374.)

It is patent in this case that the defendant was negligent in
not providing sufficient men to do the work which the plaintiff
was called upon to perform. If this is a fact, risks arising out
of the negligence of the master or of one whom the master in-
structs with the superintendence of the work (foreman in this
case) are not risks ordinarily incident to the employment, and
are not assumed by the employee. (*Baxter* v. *Roberts,* 44 Cal.
187, 13 Am. Rep. 160; *Beeson* v. *Green Mt. G. Min. Co.,* 57 Cal.
20; *Sanborn* v. *Madera Flume etc. Co.,* 70 Cal. 261, 11 Pac.
710.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Plaintiff brought this action to recover damages for a per-
sonal injury suffered by him during the course of his employ-
ment as a section-hand. The complaint alleges in substance
that while he was in the employ of defendant and under the
immediate direction of its foreman, Manuel Pearson, whom he
was bound to obey, it became plaintiff's duty to assist in lifting
a heavy rail then lying on the ground near the track of defend-
ant; that the rail was thirty feet in length and weighed about
990 pounds; that it was to be lifted from the ground to and
upon a hand-car to a height of approximately three feet; that
to lift such a rail requires from six to eight able-bodied strong
men; that this fact was well known to the defendant and its
foreman, or ought to have been known to them, but was not
known to plaintiff; that it was defendant's duty, in the exer-
cise of reasonable care, to furnish a sufficient number of men
to lift the rail so that plaintiff would not be exposed to danger
in the performance of his duty; that defendant failed to per-
form its duty in this behalf; that knowing that from six to

eight able-bodied strong men were necessary for that purpose, it furnished only two men beside the plaintiff, to do the work; that this number was insufficient; that the plaintiff had never had any experience in lifting rails; that this fact was known to defendant and that, through the negligence of defendant in failing to furnish enough men and while plaintiff was assisting to lift the rail, he suffered the injury complained of. Defendant's general demurrer having been overruled, it answered denying the negligence charged and alleging affirmatively that plaintiff assumed the risk. There was issue by reply. The plaintiff had verdict and judgment. The cause is before this court upon appeals from the judgment and an order denying defendant's motion for a new trial. The principal questions submitted are, whether the complaint discloses upon its face that plaintiff assumed the risk, and whether, if it does, the evidence discloses that he did so.

There is a tunnel on the line of defendant's road to the east of Bozeman, in Gallatin county. In this tunnel and near the portal toward Bozeman a rail in the track had become defective, and it was necessary to replace it with a new one. The plaintiff with two others, a young man of nineteen and an old man of sixty-two years, accompanied by Manuel Pearson, the section foreman, were engaged in doing the work. They had obtained the new rail from rail-posts a short distance to the west and brought it on a hand-car. In loading it on the car they had been assisted by the brother of plaintiff who chanced to be passing. When the new rail had been put in place, it was necessary to remove the defective one in order to clear the track. It was lying near the middle of the track. To load it on the car the foreman, assisted by the plaintiff and one of the remaining two men, lifted one end of it while the fourth man pushed the car under it. A lift of two and a half feet was necessary in order that the car might have room to pass under. As plaintiff lifted, he felt a sharp pain in his side. Later a swelling appeared in his groin which, upon examination, his physician found to be due to a rupture. Plaintiff was twenty-

three years of age.   He had been reared up on a farm in Gallatin county and had the experience of the average boy brought up on a farm and inured to such labor as this pursuit requires.   He had worked for defendant as a section-hand for three or four months early in 1913.   He again entered its service in January, 1914, and continued therein until March 23, 1914, when he was injured.   We quote the following excerpts from the testimony of plaintiff which disclose how the work was begun and proceeded until it was completed, and plaintiff's experience in that kind of work:

"Q. Referring to the rail in question, how do you get your information as to the weight and length of this rail?

"A. I inquired of the foreman after the accident.

"Q. Did you know how long this rail was or how much it weighed before the accident occurred?

"A. No, sir, I did not.   Two men assisted me in the lifting of the rail,—the foreman and the young Romeo, nineteen years of age, and the old man.   The foreman, Mr. Pearson, had charge and directed this work.

"Q. Did you previous to this accident ever have any experience in lifting rails?

"A. No, sir, I did not.

"Q. Did you know that an injury of this kind might result to you as the result of lifting the rail?

"A. No, sir, I did not.   *   *   *

"Q. You knew that was one of the duties of section-hands when you worked there in 1913, to replace defective rails, did you not?

"A. I didn't replace any defective rails when I worked there before—or broken rails.   *   *   *

"Q. Don't you know that it was your duty as part of that section gang to replace that rail if you found one—didn't you know that was your duty?

"A. I didn't know that they would try to put it in with the amount of men we had.   *   *   *

"Q. Where did you get the new rail at the time you put it into the track?

"A. Outside.

"Q. Outside of the tunnel?

"A. Yes, sir.

"Q. How far outside of the tunnel?

"A'. About a quarter of a mile or something like that—maybe not that far.

"Q. It was one of the rails that stands upon one of these two rail-posts along the side of the track?

"A. Yes, sir.

"Q. How did you get that rail from the rail-post on the outside of the track, into the tunnel?

"A. We slid it—we had those kind of—

"Q. (Interrupting.) Tongs?

"A. Yes, and kind of zigzagged it back and forth until we got it into the middle of the track and we had a—we had a bar in the middle of the track and it was up on that—I can't say for sure but I am quite certain that we were trying to lift the rail up. My brother was going up to the depot after some cans and I hollered at him and said, 'Hey, kid, come over and give us a lift. Come and help us.'

"Q. Why did you call your brother over there—he wasn't working for the company?

"A. I wanted him to give us some help.

"Q. Why did you want him to give you help?

"A. To make it easy for us.

"Q. As I understand now, you first rolled this rail off these rail-posts and then you had these tongs which are something similar to a pair of ice-tongs which clamped on to the top of the rail and had handles to it to pull on. Then you proceeded to pull the rail across from the rail-posts to the track by pulling one end around and then going to the other end and pulling it around a few feet?

"A. Yes, sir.

"Q. When you got it to the track how did you get it over the rail?

"A. We had a bar from the top of the track and we slid it up on to the track—there was a bar across the two rails so it couldn't drop clear down.

"Q. That would give you an opportunity to get your two hands under it to lift it up?

"A. Yes, and a much easier lift.

"Q. As a matter of fact—you say you called your brother over—and the four of you lifted it up and the other fellow shoved the car under. Just the same as when you took the rail out?

"A. Yes, sir, but it wasn't quite so hard a lift—these are old sidetracks and they have no ballast under the rails and the rails are much smaller and in the tunnel it is higher still and we have three inches of shim under the rails—it was nine inches further lift in the tunnel than outside.

"Q. You lifted it the same way—three men lifted up one end and the fourth man shoved the car underneath it?

"A. Practically the same way.

"Q. As I understand you, when you got into the tunnel you skidded the new rail off the hand-car, took out the old rail and lifted that into the center of the track and put the new rail in?

"A. Yes, sir.

"Q. So that the old rail was lying in the center of the track?

"A. Yes, sir.

"Q. You then lifted that rail as you have before stated by three of you lifting it up and the other man shoving the car under it?

"A. Yes, sir.

"Q. In pulling this rail over from the sidetrack or from the rail-posts and lifting it on the car outside there, you learned that it was a pretty heavy rail?

"A. We had lots of time when on the outside we weren't rushed at all—on the inside we were in a hurry because 170

passenger was coming and we had to hurry; it wasn't half the lift on the outside.

"Q. You didn't discover on the outside that this rail weighed several hundred pounds?

"A. I didn't have any idea of what it weighed.

"Q. You thought it necessary to call your brother over from the road and ask him to help give a lift?

"A. I thought he could—I thought he was going by and he might help us.

"Q. You were the only one who called him over and asked him to help you?

"A. Yes; I asked him if he would.  *  *  *

"Q. I don't know whether I asked you if the rail you took out of there in the tunnel was the same sized rail as the one you put in, was it?

"A. Yes, sir.  *  *  *

"Q. You say that during your experience as a section-hand in 1913 you never saw any rails?

"A. Yes, I saw rails—lots of them. I never saw rails replaced by new rails, not on my section—they never replaced any while I was there. I saw lots of rails along the track, and I saw rails outside of the track. I saw rails along on these section posts. I never had occasion to put one of those rails out on section posts. I don't know what the weight of a hand-car is. I have lifted with a hand-car. It is a duty of a section-hand to lift off a hand-car and lift it on whenever they stop to do any work, but we only have to lift it about an inch and it is off."

The action was brought under the Federal Employers' Liability Act. (Act April 22, 1908, 35 U. S. Stat. 65; Amendment Act, April 5, 1910, 36 U. S. Stat. 291.) There is no controversy that at the time plaintiff was injured he was engaged in interstate commerce. Section 4 of the Act takes away the defense of assumption of risk in any case in which a violation of a federal statute enacted for the safety of employees has contributed to the injury or death of an employee, but leaves it available

in all other cases. _(Seaboard Air Line Ry. v. Horton, 233 U. S. 492, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, 8 N. C. C. A. 834; Southern R. Co. v. Crockett, 234 U. S. 725, 58 L. Ed. 1564, 34 Sup. Ct. Rep. 897.) The defense may be interposed as a bar in an action for the [1] personal injury or death of an employee, when such injury or death has been caused by a hazard which is incident to the particular business. When it has resulted from a hazard brought about by a failure of the employer to exercise the degree of care required of him by law to perform his primary duty to provide a reasonably safe place of work and reasonably suitable and safe appliances for the work, the defense is also available, provided the employee is aware of the condition of increased hazard thus brought about, or it is so obvious that an ordinarily prudent person, under the same circumstances, would have observed and appreciated it. The rule thus stated has been recognized and applied by this court in several cases. (McCabe v. Montana C. R. Co., 30 Mont. 323, 76 Pac. 701; Hardesty v. Largey Lumber Co., 34 Mont. 151, 86 Pac. 29; Coulter v. Union Laundry Co., 34 Mont. 590, 87 Pac. 973; Leary v. Anaconda C. Min. Co., 36 Mont. 157, 92 Pac. 477; Monson v. La France Copper Co., 43 Mont. 65, 114 Pac. 778; Fotheringill v. Washoe C. Co., 43 Mont. 485, 117 Pac. 86; Molt v. Northern Pac. Ry. Co., 44 Mont. 471, 120 Pac. 809.) This court has held [2] that the failure of the employer to provide a sufficient number of competent employees to perform the work in hand with reasonable safety to all those engaged in its accomplishment is culpable negligence. (Verlinda v. Stone & Webster E. Corp., 44 Mont. 223, 119 Pac. 573.) In this case it was said: "Again, if he [the superintendent] permitted Turchin [a coemployee of plaintiff] unaided to undertake to lower the chain, knowing that by reason of its weight Turchin could not hold it, he was guilty of negligence which must be imputed to the company; for it is also a duty of the master to provide a sufficient number of servants to perform the work with reasonable safety."

Whether the rule here stated applies to the facts in the instant case, we shall see later.

It is generally held in cases like this that the employee is **[3]** the best judge of his own muscular capacity, and the risk is upon him not to overtax it. (*Stenvog* v. *Minnesota Transfer R. Co.,* 108 Minn. 199, 17 Ann. Cas. 240, 25 L. R. A. (n. s.) 362, 121 N. W. 903.) In this case the plaintiff was directed to assist another employee in loading switch-rails into a box-car. After the work had proceeded for thirty minutes, the plaintiff found that it was too heavy for him, and so informed the defendant's foreman. The foreman disregarded the complaint and directed the plaintiff to go on with the work. In lifting a heavier rail plaintiff strained his back. The court held that he was the best judge of his own capacity, and that in proceeding to do the work he assumed the risk of overtaxing it, and could not recover.

In *Worlds* v. *Georgia R. Co.,* 99 Ga. 283, 25 S. E. 646, the plaintiff, a yard trainman, was directed by his superior—the yardmaster—to carry cross-ties to assist in putting a derailed coal-car on the track. He complained that the ties were too heavy, but was required by the yardmaster to proceed, which he did, and was injured by a strain of his back. The court held that the defendant was not liable because, when an employee of a railroad company is directed to lift and carry any ordinary object like a cross-tie, he is bound to take notice that it is heavy and that a certain amount of physical strength will be required to accomplish his task; and if he misconceives the amount to be exerted and overstrains and injures himself in an effort to accomplish it, he assumes the risk. That he acts under the immediate orders of a superior does not alter the case, though he has reason to believe that disobedience will result in his dismissal. To the same effect is the holding in Missouri (*Haviland* v. *Kansas City etc. R. Co.,* 172 Mo. 106, 72 S. W. 515), North Carolina (*Bryan* v. *Southern Ry. Co.,* 128 N. C. 387, 38 S. E. 914), Tennessee (*Ferguson* v. *Phoenix Cotton Mills,* 106 Tenn. 236, 61 S. W. 53), Texas (*Texas etc. R. Co.* v. *Miller,* 36 Tex. Civ. App. 240, 81 S. W. 535, *Haywood* v. *Galveston etc. R.*

*Co.*, 38 Tex. Civ. App. 101, 85 S. W. 433), and Oklahoma (*St. Louis & S. F. R. Co.* v. *Snowden* (Okl.), 149 Pac. 1083.)    The rule is declared in these cases in varying terms, but from them may be deduced the conclusion stated by the annotator of *Stenvog* v. *Minnesota Transfer R. Co., supra* [17 Am. & Eng. Ann. Cas. 240] : "The lifting of heavy objects involves no perils that are not obvious to any person of common understanding; hence an employee who undertakes to lift or assist in lifting a heavy object assumes the risk of injury due to the task being too great for his strength, and in case injury results, he is not entitled to recover damages from his employer."    The rule is thus stated by Mr. White in his work on Personal Injuries on Railroads : "It is quite generally held that when an employee is injured from lifting at a car, or a steel rail, or any similarly heavy substance, where the weight of the object attempted to be lifted is a matter of common knowledge and the number of men that it takes to handle it is well known by the employee, the risk of such an injury is assumed as an incident of the employment." (Sec. 339.)

Cases like the foregoing may be classed as "strain cases," in that the injury complained of is internal, and is the result of overtaxation by the injured employee.    Cases frequently arise in which the injury is external—as the crushing of a hand or foot of an employee because his strength, combined with that of his assistants, is not sufficient to safely handle the heavy object.    The latter are usually cited as based upon the same principle as the former.    Of this class are *Southern Kansas Ry. Co.* v. *Drake,* 53 Kan. 1, 35 Pac. 825, *White* v. *Owosso Sugar Co.,* 149 Mich. 473, 112 N. W. 1125, *Fremont Brewing Co.* v. *Hansen,* 65 Neb. 456, 91 N. W. 279, 93 N. W. 211.    All of these cases proceed upon the theory, either that such injuries arise from hazards ordinarily incident to the particular business, or that the hazard is so open and obvious that the injured employee assumes the risk.    The case of *Verlinda* v. *Stone & Webster E. Corp., supra,* is assignable to still a different class, in that the injury there complained of was caused by the inability

of an employee to handle, without assistance, a heavy chain attached to a boom by a hook, and for this reason it got away from him and, falling from the hook, injured another employee who was engaged upon a distinct part of the work. It is not pertinent to this case except in so far as it announces the general rule that it is the duty of the master to provide a sufficient number of servants to perform the work in hand with reasonable safety. In other words, "when the work requires men to do it, the men engaged therein are classed as appliances" (*Haviland* v. *Kansas City etc. R. Co., supra*), and the general rule as to defects in appliances furnished by the master controls. If we should follow the path of authority as defined in the other cases cited *supra,* we would be compelled to the conclusion that the plaintiff cannot recover in this case, either upon the allegations of his complaint or the evidence adduced in support of them, and this, for the reason that the plaintiff assumed the risk as an incident to the employment and thus absolved the defendant from liability. This general rule has been held not to apply, however, where the servant is a person of immature years and sustains the injury while under the direction of his superior. (*Sherman* v. *Texas etc. R. Co.,* 99 Tex. 571, 91 S. W. 561.) In this case a young man seventeen years old, a machinist helper in defendant's shops, sustained internal injuries in lifting a heavy piece of iron. He was well grown and had been at work in defendant's employment about three months. During that time he had been called two or three times to assist in lifting and placing heavy pieces of iron upon a lathe. On this occasion he had been called and deputed by the foreman to assist the operative of a lathe to put a heavy piece of iron upon his lathe. He acted as required by the foreman under the direction of the operative, and in lifting one end of the iron overtaxed his strength and was injured. In the trial court plaintiff had judgment. The court of appeals reversed it and ordered judgment for defendant. The supreme court disapproved the judgment of the court of appeals and remanded the case for trial on the merits. On the question of

assumption of risk, the supreme court said: "It cannot be said, as a matter of law, that the minor, George Sherman, could, by inspection of the piece of iron, tell whether it was too heavy for him to lift and that he was capable of understanding the danger attending the lifting of the iron. Indeed, the only way that he could decide the question was to do as he did—obey the command of his superior and make the attempt. But in that experiment, when he learned that the iron was too heavy for him to lift, the injury had been inflicted." In its ultimate analysis this statement, it seems to us, is nothing more than a concrete application of the doctrine of assumption of risk as declared by this court, in *McCabe* v. *Montana Cent. R. Co., supra,* and the other cases cited, *viz.,* that when the employee knows and appreciates a danger brought about by defective appliances or an unsafe condition of the place of his work, he assumes the risk, but not otherwise. In *Bonn* v. *Galveston H. & S. A. Ry. Co.* (Tex. Civ.), 82 S. W. 808, the plaintiff was a man fifty-six years of age, an experienced section-hand, though he had not been accustomed to handle rails. He was directed by his foreman to assist in carrying a rail over a ditch. As this was being done, one of the men in the crew slipped, throwing the excessive weight upon the plaintiff, which caused a strain resulting in a rupture. The trial court directed a verdict for the defendant. The court of civil appeals reversed the judgment, holding that the evidence presented a case for the jury. A second trial resulted in a verdict and judgment for the plaintiff. In *Galveston etc. R. Co.* v. *Bonn,* 44 Tex. Civ. App. 631, 99 S. W. 413, the court refused a writ of error, holding that the evidence was sufficient to sustain the verdict.

In *Illinois Cent. R. Co.* v. *Langan,* 116 Ky. 318, 76 S. W. 32, the facts were these: The plaintiff was a freight handler. He and three others were directed by the freight clerk to unload steel shafts from a freight-car to the freight platform, the shafts weighing from 200 to 460 pounds. The larger ones were five or six inches in diameter, twenty feet long, were round, and had been oiled or greased. The crew having moved several of

the smaller shafts, requested the clerk to obtain assistance for the moving of the larger ones, stating that they could not move them with safety. The clerk having failed to get additional men, told the crew to go on with the work. While they were attempting to handle one of the larger shafts, it slipped and fell on plaintiff's foot, crushing it. The court held that a verdict for the plaintiff was proper. Though in the case of *Sherman* v. *Texas etc. R. Co., supra,* the immature years of the plaintiff was, in the estimation of the court apparently a decisive factor, it seems to us that the important consideration is the experience of the employee in the same kind of work, though immaturity of years is a pertinent fact in determining his capacity to judge correctly.

Nor do we think that it is a decisive factor that the employee did the act resulting in his injury in obedience to an express order of the superior given at the time. If the employee is acting in the line of his duty, he is acting in obedience to the orders of his superior, whether the superior is present or absent. It is the right of the master, as well as his duty, to give orders. The duty of the employee is to yield obedience unless it is obvious that obedience will expose him to unusual dangers. If the employee should stop to make tests and conduct experiments to determine for himself whether he can safely obey his orders, it would be impossible to accomplish any kind of enterprise. Therefore the employee has the right to assume that the master has used due diligence to perform all the primary duties incumbent upon him when he assigns a duty to be performed. (*McCabe* v. *Montana Cent. R. Co., supra.*)

On this subject, in *Chicago & N. W. Ry. Co.* v. *Bayfield,* 37 Mich. 205, 210, Mr. Justice Cooley said: "It is true that the master had no right to direct him [the servant] to do anything not contemplated in the employment, but when one thus contracts to submit himself to the orders of another, there must be some presumption that the orders he receives are lawful, the giving of the orders being of itself an assumption that they are lawful; and the servant who refused to obey would take upon

himself the burden of showing a lawful reason for the refusal. This of itself is sufficient reason for excusing the servant who declines the responsibility in any case in which doubts can possibly exist; he should assume that the order is given in good faith and in the belief that it is rightful, and if in his own judgment it is unwarranted, it is not for the master to insist that the servant was in the wrong in not refusing obedience.''

The case where the employee is at work under the order of his superior, spoken at the time, is not different from that in which he is working in the presence of his superior and under his direction but without spoken order. He is under the same obligation not to stop and question and decide for himself in the one case as in the other, unless, as we have said, the hazard is so obvious that, as a reasonably prudent person, he must have understood and appreciated it. The presence and general direction of his superior implies an order for everything done.

Applying these principles to the present case, we conclude [4, 5] that the complaint states a *prima facie* case, and that the evidence made a case for the jury. It is true that actual ignorance of the particular risk will not relieve the servant; that his ignorance must be excusable; that he is bound to use his senses, and cannot allege ignorance of a hazard which is obvious to anyone of ordinary intelligence and understanding; and that though he does not appreciate the extent of the hazard or does not know precisely the injury he may incur, the risk is his (Bailey on Personal Injuries, 2d ed., sec. 376; *Anderson* v. *Northern Pac. R. Co.*, 34 Mont. 181, 85 Pac. 884); yet if the hazard requires knowledge or judgment not possessed by men of ordinary observation, the servant does not, as a matter of law, assume the risk (Bailey on Personal Injuries, sec. 376, *supra*). The allegations of the complaint bring the case within the principle of *Coleman* v. *Perry*, 28 Mont. 1, 72 Pac. 42, *Killeen* v. *Barnes-King Dev. Co.*, 46 Mont. 212, 127 Pac. 89, rather than within the rule of *Coulter* v. *Union Laundry Co.*, 34 Mont. 590, 87 Pac. 973, *Fotheringill* v. *Washoe Copper Co.*, 43 Mont. 485, 117 Pac. 86, and *Molt* v. *Northern Pac. R. Co.*, 44 Mont. 471, 120

Pac. 809, upon which latter counsel rely, *viz.*, the facts alleged do not as a matter of law disclose that plaintiff assumed the risk.

As we view it, the evidence presented a case calling for the judgment of the jury. Neither the plaintiff nor any other witness stated that the men engaged in the work were not sufficient to safely handle the rails. Counsel took the position at the trial that the evidence offered on this point by plaintiff was. incompetent, insisting that the number of men required to lift a heavy object such as a steel rail was a matter of common knowledge. The testimony of the plaintiff. discloses the number and the apparent physical condition of the men employed and the character of the work. The jury determined that the number of men was not sufficient, thus convicting the defendant of negligence. Of the result in this behalf counsel do not and cannot justly complain. Assuming, then, that the defendant was at fault, was this fault the proximate cause of plaintiff's injury? The causal relation between the fault and the injury is shown, we think, by the implied direction of the foreman to do the work as it was done. The plaintiff had the right to presume that he might safely act under the direction of the foreman, and the injury presumptively resulted from error in the judgment of the foreman in estimating the capacity of the men, including the plaintiff, rather than from error in the judgment of the plaintiff, inexperienced as he was in doing the particular kind of work. It being the duty of the defendant to provide a suitable number of servants in the first place, it was primarily the judge as to whether it had met this duty, and the implied direction to the plaintiff to proceed was, under the circumstances, the proximate cause of the injury.

It may not be presumed as a matter of law that the plaintiff, [6] though reared on a farm, had gained appreciative knowledge that the weight of the rail was beyond the capacity of the three men, from the fact that four men a short time before had lifted another rail of the same size and weight. The situation was then different. When, therefore, he came to lift the second rail, the burden was not upon him to refuse to proceed with the

smaller number of men, as against the alternative of assuming the risk of such injury as he might suffer. The evidence as a whole made a case from which reasonable men might draw different inferences, and this called for the judgment of the jury. In drawing therefrom an inference favorable to the plaintiff, they were within their legitimate province, and their conclusion we may not overturn.

Counsel contend that the verdict is contrary to instructions 6 and 7, and hence is contrary to law. In these instructions [7] the court properly submitted to the jury the question whether the plaintiff assumed the risk under the circumstances disclosed by the evidence. They insist that inasmuch as it appears that the plaintiff assisted in lifting the first rail and later assisted in lifting the second without objection or protest, it appeared conclusively that he assumed the risk. Upon this evidence, they say, the finding of the jury could not have been in favor of the plaintiff. As already pointed out, the evidence made a case for the jury upon the issue of assumption of risk; and since they were at liberty to find either way, their finding was not contrary to law.

In instruction No. 4 the court told the jury that it is the [8] duty of the master to exercise ordinary care to assign an adequate number of servants to each particular piece of work, that the work may be done with safety to themselves. Counsel contend that this cast too great a burden upon the defendant. As we understand the rule defining the primary duties of the master as to safe appliances, *etc.*, it requires him not only to provide them in the first place, but to maintain them during the progress of the work, and each particular part of it. (3 Labatt on Master & Servant, sec. 1107.) The obligation is not relaxed at any time; nor is the master excusable for any negligence in this behalf, except by the servant himself who knowingly assumes the increased risk.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.